## SLAY v. WHEELER et ux.

### No. 1475.

Court of Civil Appeals of Texas. Eastland.

June 7, 1935.

Rehearing Denied July 12, 1935.

John C. Read, Earl A. Forsythe, and Touchstone, Wight, Gormley & Price, all of Dallas, for appellant.

Allen & Allen, of Dallas, for appellees.

LESLIE, Chief Justice.

Frank C. Slay instituted this suit against Fred Wheeler and wife on a promissory note in the sum of $942.56, and for foreclosure of vendor's lien claimed to secure payment of same. These defendants answered setting up various defenses, including duress, threats, fraud, etc., and brought a cross-action in the nature of trespass to try title for the purpose of clearing the property in question, claimed as a homestead, from any lien asserted by the plaintiff. The case was tried before the court and jury, and upon the verdict the court rendered a judgment denying the plaintiff any recovery upon the note, and vesting title to the property in the defendants. Plaintiff Slay alone appeals.

The note is dated June 9, 1933, and was executed as part of the consideration for a conveyance by R. H. Taylor and wife to the defendants of lot 42 in block B/2432 in Magnolia Park addition to the city of Dallas (map records, vol. 2, p. 197). A vendor's lien both in the note and deed purport to have been reserved to secure the payment of same. The note was in form negotiable, and made payable to the order of A. G. Elmendorf and Vern D. Adamson, who thereafter (June 15, 1933), before maturity, and for a valuable consideration, and without qualification, indorsed it to appellant, Frank C. Slay.

In connection with the above transfer by indorsement of Adamson and Elmendorf of the note to Frank C. Slay, a written agreement, of date June 15, 1933, was executed by Slay with Adamson and Elmendorf, a pertinent part being as follows: "* * * Whereas, *said note and all liens securing the payment thereof,* has been sold, transferred and conveyed by the undersigned to Frank C. Slay of Dallas County, Texas; Now Therefore, it is mutually agreed and understood by and between the said A. G. Elmendorf and Vern D. Adamson and the said Frank C. Slay that the first maturing $500 of said

note is owned by the said Frank C. Slay, and that the last maturing installments of said note of $442.56 is owned by the said A. G. Elmendorf and Vern D. Adamson; that all the liens securing the payment of the preferred interest of $500 above mentioned now owned and held by the said Frank C. Slay are first and superior to the liens securing the payment of a remaining $442.56 owned and held by A. G. Elmendorf and Vern D. Adamson which liens securing the payment of the remainder of the $442.56 held by said A. G. Elmendorf and Vern D. Adamson are a second and inferior lien against said property, it is also further understood that if the preferred interest of $500 owned and held by the said Frank C. Slay is paid at its maturity as expressed therein, the said Frank C. Slay is to reconvey to the said A. G. Elmendorf and Vern D. Adamson, the unpaid balance of the $442.56 interest in said note held by them, and that in the event of foreclosure any sum after necessary legal expenses as expressed in the Deed of Trust above mentioned, shall be paid to the said Frank C. Slay until his interest in said note is paid in full, and the remainder, if any, then to be paid to the said A. G. Elmendorf and Vern D. Adamson, any surplus above these amounts to be applied as directed in said deed of trust." (Italics ours.)

The suit was instituted by Slay who declared upon the *entire note* and as legal holder thereof. Elmendorf and Adamson intervened, seeking a judgment for the balance, if any, after the satisfaction of the beneficial interest owned by Slay. The Wheelers answered as above stated.

The amount of the note seems to have been arrived at by combining certain debts theretofore owed by the Wheelers, and purporting in the main to be secured by liens on the land in question, and by virtue of which obligations, etc., said Taylor claims to have come into the ownership of the land by reason of the purchase thereof at a trustee's sale in satisfaction of said debts.

Three issues were submitted as follows:

"(1) How much of the Postal Savings & Loan Association note for a $1,000 was due on the date it was foreclosed?" To this question the jury answered, "None."

"(2) Was the note for $942.56 given to Adamson and Elmendorf in connection with the repurchase of the property procured by duress from any or all of cer-

tain individuals named?" To this the jury answered, "Yes."

"(3) Did Fannie (Wheeler) sign the note to the Postal Savings & Loan Association for $1,000 hereinabove mentioned and the deed of trust securing same?" To this the jury answered, "No."

From the judgment entered upon this verdict in favor of the Wheelers, Elmendorf and Adamson do not appeal. As noted, they were charged with duress, etc., in the procurement of the $942.56 note, and the testimony is in our judgment sufficient to support the verdict in so far as it relates to them.

■ A careful examination of the pleadings upon which the defendants, the Wheelers, went to trial, together with the testimony, convinces us that there is neither pleading nor testimony charging the appellant Slay with participation in any character of duress, threats, etc., upon the Wheelers for the purpose of securing the execution of the note, deed, etc., nor is there any pleading or testimony to the effect that he had at the time he acquired the note any character of notice of the existence of threats, duress, etc., if in fact the note was originally so procured. Should we be mistaken in the interpretation of the pleadings, there can be no doubt of the absence of said testimony.

The verdict embraces a finding implying the perpetration of forgery on the part of some one, but an examination of the record and an inspection of the issue (No. 3) itself discloses that such act, if any, relates to such charge as it pertains to an instrument anterior in point of time to the lien evidenced by the $942.56 note or vendor's lien here involved. Hence, that forgery, if any, does not inhere in the instrument in suit. It conclusively appears that the defendants executed the note in suit, and they recite therein as follows: "This note is given in partial payment for a certain lot or parcel of land situated in Dallas County, Texas, described as Lot No. 42 in Block B/2432 of the Magnolia Park Addition to the city of Dallas, Dallas County, Texas, this day conveyed by R. H. Taylor to Fred Wheeler and Fannie Wheeler, husband and wife, and to secure the payment of same a vendor's lien is retained by the payee herein and such vendor's lien is hereby acknowledged."

The deed accepted by them from the Taylors, and in which the vendor's lien was retained, was executed June 9, 1933,

filed for record June 15, 1933, and recorded in the Dallas county deed records. Evidently the plaintiff Slay would remain unaffected by forgery, if any, relating to the Postal Savings & Loan Company's deed of trust securing a prior indebtedness of the defendants in the alleged sum of $1,000. The note in suit is not charged to be a forgery, but liability thereon is sought to be avoided on the ground of threats, duress, etc.·

■ This brings to us a consideration of the last, and, no doubt, the controlling law question in the case. It is in substance raised by appellees' counter propositions 5 and 6, as follows:

"5. An indorsement which purports to transfer to the indorsee a part only of the amount payable on a note, or merely an interest in the note, as in the instant case, is void and transfers no interest at all.

"6. An indorsement which purports to transfer to the indorsee a part only of the amount payable or only an interest in the note, as in the instant case, is not a transfer within the custom of merchants, and the rights of the parties are therefore governed by the rules applicable to non-negotiable instruments."

These propositions are set out that they may appear precisely as urged by the appellees. The appellees, and doubtless the trial court, proceeded upon the theory that Slay became the indorsee of the note through what is known, or spoken of, as a split or partial indorsement. In other words, if the appellant Slay under a split indorsement became the owner of only a part interest in the note, and his immediate indorsers procured same through duress, etc., and at the same time continued owning an interest therein, the note would not be negotiable, but would be nonnegotiable, and the appellant Slay would, therefore, not be an innocent purchaser of a negotiable instrument, but his rights would be governed by the rules applicable to non-negotiable instruments. That is, the defense of duress, etc., as between Adamson and Elmendorf on the one hand, ·and the Wheelers on the other, would become a defense against the claims acquired by Slay.

The appellees cite as authority for their contention, section 32, of article 5934, R. S. 1925 (Uniform Negotiable Instruments Law); Frank v. Kaigler, 36 Tex. 305; Lindsay v. Price, 33 Tex. 280; Adams v. Kelly (Tex. Civ. App.) 196 S. W. 576.

Section 32 is as follows: "The indorsement must be an indorsement of the entire instrument. An instrument which purports to transfer to the indorsee a part only of the amount payable, or which purports to transfer the instrument to two or more indorsees severally, does not operate as a negotiation of the instrument. But where the instrument has been paid in part, it may be indorsed as to the residue."

This statutory rule is in·effect declared by the authorities. For instance, in Frank v. Kaigler, supra, the Supreme Court said: "But the indorsement in this case was for a part only of the note sued on. Such an indorsement cannot be made, and was absolutely void." Citing authorities.

While the instrument there promised to pay "$525 in horse property," it did, however, in fact have indorsed upon it the following: "Pay to A. P. Luckett, or order, $400.00 in stock out of this note, March 18, 1861, W. G. Kelley."· The question arises whether or not a negotiable note was up for consideration, but disregarding that phase of the case, the actual indorsement on the note was merely for a portion of the same, and the rule of law announced, and apparently applied, was a correct statement of the rule as set forth in the statute.

In fact, we understand that the appellant concedes that an indorsement of a negotiable instrument to be effective ·must be an indorsement of the entire· instrument as held by the authorities relied oh by the appellees. The decisive· point here is whether or not the above rule of law was in any way violated when the appellant Slay became the indorsee thereof. By reference to the note in suit we find the unqualified indorsement thereon of A. G. ·Elmendorf and Vern D. Adamson. Being the payees in the note, their names as indorsers thereof create no ambiguity in itself, but said indorsement imposed a, distinct and certain liability. No vice whatever inheres in the indorsement, and it is *in form* strictly in accordance with the character of indorsement required for negotiable instruments. Truely, it cannot be regarded as a split indorsement in contemplation of the law and authorities referred to. Neither the note nor the indorsements indicate that Elmendorf and Adamson were attempting to transfer any partial interest in the note. As thus indorsed and transferred, the makers thereof could have paid the entire amount of

the note to Slay with perfect safety against the rights of Elmendorf and Adamson to make any claim whatever against them (the makers). This, we think, is true, although by the terms of the collateral contract certain rights or beneficial interests were retained in the note by the transferors (Adamson and Elmendorf) in the event of certain contingencies. The situation of the appellant with reference to the note is analogous to that existing when a negotiable instrument is pledged by a payee to secure the payment of an obligation smaller than the note pledged. In such cases where an amount is collected upon the pledge greater than is necessary to discharge the obligation secured thereby, the transferee retains the surplus for the benefit of the transferor. However, in the instant case the plaintiff is not seeking to recover any amount for the benefit of Adamson and Elmendorf since equitable considerations, elsewhere noted, deprived them of the right to recover such amount, if any.

The authorities cited by the appellees deal strictly with "split indorsements," *carried by the note itself*. Such indorsements undoubtedly affects the negotiability of the instrument. But a *collateral agreement* evidencing (1) merely a divided interest in the proceeds of the note, (2) that the beneficial interest, if any, of the transferor is wholly contingent in nature, and (3) subordinate to that of the transferee, does not, in our opinion, affect the negotiability of the note. It affects neither the form of the negotiable instrument nor the indorsements thereof.

As stated, the note is in form negotiable, and if it be conceded that it was procured by duress, etc., on the part of Elmendorf and Adamson, the fact that there are neither pleadings nor proof charging Slay with participation therein, or knowledge thereof, requires that his rights as an innocent purchaser be determined by the rule of law stated in Black on Rescission and Cancellation (2d Ed.) vol. 3, p. 1547: "Though a deed or mortgage may have been procured by means of fraud or false representations or by duress or undue influence, or without consideration so as to make it voidable at the instance of the grantor, yet it cannot be rescinded or canceled after the property has been transferred to a bona fide purchaser for value who takes, without knowledge of, or participation in the fraud or other invalidating circumstance."

Further, we are of the opinion that the principle applied in Wright v. Hardie, 88 Tex. 653, 32 S. W. 885, 886, should have application here. It is as follows: "Where a negotiable instrument is transferred as a pledge, and the maker has no defense as against it, it seems that the pledgor may recover *the full amount, without reference to the amount of the debt secured* by it. In case the sum recovered should exceed the secured debt, the pledgee would hold the excess in *trust for the pledgor*. So, where the absolute title has been transferred to an innocent holder for value, it may be that he may recover the full amount evidenced by the instrument, without reference to the consideration which has passed from him. But the case of an innocent holder of such an instrument, which has been fraudulently transferred to secure the payment of a debt, is different. The doctrine which protects a bona fide purchaser of negotiable paper for value is maintained in part upon principles of *commercial policy*, but has a deeper foundation in the principle of an equitable estoppel. The maker of a promissory note, by signing and delivering it to the payee, asserts its validity, and by making it payable to the bearer, or to the order of the payee, *holds out an invitation to all the world to deal with it, as evidencing a valid debt*. For that reason, and upon the principle that he who trusts most should suffer most, the law shuts off, as against an innocent holder, any defense the maker may have against the payee, *in so far as it may be necessary to protect such holder* in the rights acquired by his transfer. *A recovery of so much upon the collateral paper as is necessary to discharge the debt secured is requisite for the protection of an innocent holder*, although, as between the maker and payee of the note, the hypothecation may have been fraudulent. More than this the holder cannot claim in his own right, nor can he claim as trustee of the transferor of the instrument, because the maker owes the latter nothing. Accordingly, we find that it is generally held that the pledgee in such a case *is limited in his recovery to the amount of his debt.*" (Italics ours.)

At the conclusion of the testimony the appellant asked for an instructed verdict in his behalf. That motion, limited in scope under the conclusive facts, was for an instruction to the jury "to return a verdict for the plaintiff for the amount of his interest in the note sued on * * *

the same being $500 with interest and attorney's fees thereon," etc. For the reasons hereinbefore stated, the trial court erred in overruling this motion.

It follows that the judgment of the trial court denying the plaintiff Slay a recovery will now be reversed, and judgment here rendered in his favor against the defendant Fred Wheeler for the sum of $500, with 8 per cent. interest thereon per annum from the due date thereof, as provided in said note, together with an attorney's fee of 10 per cent. of the principal and interest so due at the date of the judgment. It is the further order and decree of this court that the appellant Slay have judgment against Fred Wheeler and Fannie Wheeler of foreclosure of the vendor's lien securing said note. The judgment of the trial court in other respects remains undisturbed.

It is so ordered.