B. SORRENTINI & CÍA., Plaintiff and Appellee, *v.* JULIO MÉNDEZ, Defendant and Appellant.

No. 11241.   Argued May 11, 1954.—Decided June 10, 1954.

*Juan Nevares Santiago* for appellant. *Carlos J. Ortiz* for appellee.

MR. JUSTICE ORTIZ delivered the opinion of the Court.

In the Superior Court, San Juan Part, B. Sorrentini & Cía., filed a complaint for the collection of a promissory note against Julio Méndez. It was alleged in the complaint that on June 10, 1949, the defendant, Julio Méndez, executed and signed a promissory note in favor or to the order of Mrs. Justina Rivera for the amount of $1,600 to become due on June 10, 1951; that on December 8, 1950, that is, prior to its expiration, the promissory note was indorsed by Justina Rivera for value received, in favor of the plaintiff which is now the holder of the note and that the defendant has not paid the amount thereof, notwithstanding plaintiff's requests. In his amended complaint defendant denied the allegation concerning the indorsement of the promissory note and denied that plaintiff was the holder of the note or that it had made any requests whatever to defendant. As special defense, defendant alleged that the plaintiff was not a holder in good faith of the promissory note; that plaintiff is only a holder as collateral security for a debt of $700 which Luis Quiñones Rivera, son of Justina Rivera, contracted with plaintiff and that no consideration whatever was paid for any indorsement that might have been or might be made by Justina Rivera to plaintiff. To his amended complaint the defendant attached a counterclaim in which he alleged having suffered damages because of the "wrongful" attachment executed by plaintiff on defendant's property, as an incident of the complaint itself brought by plaintiff in the instant case. The case was tried and the San Juan Court finally rendered judgment ordering defendant to pay to plaintiff the amount of $750, costs and $100 attorney's fees, it being stated in the judgment that the afore-mentioned pronouncements were adopted "without prejudice to the right of Mrs. Justina Rivera to collect from Julio Méndez whatever amount he owes her of the promissory note sued on herein." The trial court made the following findings:

## "FINDINGS OF FACT

"1. On June 10, 1949, defendant Julio Méndez signed a promissory note in favor or to the order of Mrs. Justina Rivera, for value received and for the amount of $1,600 due on June 10, 1951.

"2. On December 8, 1950, Justina Rivera indorsed the aforesaid note in favor of B. Sorrentini & Cía. Inc. to secure and answer for a debt contracted by her son, Luis Quiñones Rivera, with the plaintiff. The indorsement was made before maturity and Mrs. Justina Rivera assumed liability for the debt contracted by her son with the aforesaid corporation.

"3. Luis Quiñones Rivera's debt to plaintiff amounted to approximately $1,600, but by virtue of a transaction between B. Sorrentini & Cía., Inc., and Mrs. Justina Rivera and her son, Luis Quiñones Rivera, it was agreed to reduce the amount of the debt to the sum of $750, the balance being entered by plaintiff as profit and loss, and the $750 being secured then by Justina Rivera by indorsement and delivery of the note signed by the defendant.

"4. Neither Justina Rivera, nor her son, nor defendant, Julio Méndez, has paid plaintiff herein the aforesaid sum of $750, notwithstanding the requests made for its collection, and Julio Méndez, as well as Justina Rivera declared that they have not been in a position to pay the plaintiff.

## "CONCLUSIONS OF LAW

"1. Plaintiff, B. Sorrentini & Cía., Inc., is a holder in good faith of the negotiable instrument which is the object of this action (see § 405 of the Code of Commerce of Puerto Rico).

"2. The indorsement made by Justina Rivera in favor of the plaintiff was for the entire instrument, although actually Mrs. Rivera received a deposit of $50 prior to the indorsement, which she concealed from plaintiff and which does not appear on the face of the instrument. Also Mrs. Rivera received $250 from the defendant, to deliver to plaintiff after indorsement of the promissory note which she kept.

"3. Plaintiff is entitled to be paid the sum of $750 to the extent of its lien on the instrument which is the object of this suit. Section 380 of the Code of Commerce of Puerto Rico provides the following:

" 'Section 380.—Holder with lien on instrument. (*Section 28, Act No. 17, 1930, page 172.*) Where the holder has a lien

on the instrument, arising either from contract or by implication of law, he is deemed a holder for value to the extent of his lien.'

"4. Since it is proper to sustain the complaint in the instant case, the counterclaim filed by Julio Méndez against B. Sorrentini & Cía., Inc. lacks merit, since for an action for damages brought against the counterplaintiff to accrue, it would be necessary for Julio Méndez to obtain judgment in this case. (See the cases of *Martí* v. *Hernández*, 57 P.R.R. 804 and Sosa v. *Heirs of Morales*, 58 P.R.R. 362.)"

Defendant has appealed to this Court assigning the following errors:

"1.—The Court erred in holding that Justina Rivera had indorsed the note to B. Sorrentini & Cía., before maturity;

"2.—The Court erred in holding that the indorsement of the note was not made after maturity;

"3.—The Court erred in not holding that the indorsement was void;

"4.—The trial court erred in holding that despite the fact that the promissory note was indorsed, if it had been legally for the amount of $1,600, Julio Méndez owed to B. Sorrentini & Cía. the amount of $700 (*sic*) in said note, and the rest to Justina Rivera;

"5.—The trial court erred in weighing the evidence;

"6.—The Court erred in the application of the law to the facts proved herein;

"7.—The Court erred in dismissing the counterclaim."

▌ At the outset, appellant states that the plaintiff was not a holder in good faith of the document in question because the note was indorsed after maturity. On the face of the instrument it appears that the indorsement and transfer of the note were made before maturity and this fact was proved by the evidence introduced, the conclusion made by the trial court to that effect being correct.

▌ The essential averment of the defendant-appellant is predicated on the argument that, accepting the finding of fact established by the trial court that Justina Rivera indorsed the promissory note of $1,600 in favor of the plaintiff

*to secure* the debt which Mrs. Rivera's son had contracted with plaintiff, Justina Rivera and plaintiff having agreed to fix the debt in the amount of $750, such an indorsement is not valid and it does not operate as a negotiation of the instrument, since it did not imply an absolute transfer or entire indorsement of Justina Rivera's entire rights under the promissory note, or for collection of the whole note for $1,600, but merely represented an operation by way of security, and not a negotiation, because it only purports to transfer a portion of the note to the indorsee. Appellant invokes the provisions of § 33 of Act No. 17 of 1930 (Uniform Negotiable Instruments Act), corresponding to § 385 of the Code of Commerce which provides the following:

"Section 385.—(*Section 33, Act No. 17, 1930, page 172.*) The indorsement must be an indorsement of the entire instrument. An indorsement which purports to transfer to the indorsee a part only of the amount payable, or which purports to transfer the instrument to two or more indorsees severally, does not operate as a negotiation of the instrument. But where the instrument has been paid in part, it may be indorsed as to the residue."

The purpose of the aforesaid § 33 is to prevent partial indorsements and a multiplicity of suits on one promissory note. 38 Ill. L. Rev. 413, 414: "Partial Indorsement of Negotiable Paper"; Britton, *Bills and Notes*, p. 392, and see the annotation in 63 A.L.R. 499, 501.

It has been also stated that when a promissory note is transferred by writing a guaranty of payment thereon, the same contractual rights arising from the original promissory note are not entirely transferred or negotiated, but that a different collateral contract is established, not constituting an actual negotiation. 72 Penn. L. Rev. 296: "The transfer of a negotiable instrument by writing a guaranty thereon"; 34 Yale L. J. 144, 154; Arant, "The Written Aspect of Indorsement"; *Cf. Central Trust Co.* v. *Wyandotte First National Bank*, 101 U. S. 68.

Nonetheless, on the face of the note involved in the instant case it appears that the indorsement, according to its own terms, was of the entire instrument, pursuant to § 33. That Section provides also that the indorsement which *purports* (according to the English text copied *verbatim* from the Uniform Act) to transfer to the indorsee a part only of the amount payable, does not operate as a negotiation of the instrument. The "purport of an instrument" means the substance of it as it appears on its face. (35 *Words and Phrases* 540, Permanent Edition, and cases cited therein; *Hall* v. *State*, 245 P. 2d 132, 134; *U. S.* v. *Cases Containing Sandford Tomato Catsup with Preservative*, 55 F. Supp. 725, 727) that is, in the context of § 33, that on the face of the indorsement itself it should appear that only part of the amount payable has been transferred.

Disregarding the fact that the indorsement in the instant case was absolute according to its own terms, it was actually proved by extrinsic evidence (the admissibility of which has not been raised, nor questioned in this case) that the note was given to secure a debt, the amount of which is less than that involved in the principal obligation of $1,600 which appears on the face of the note. This notwithstanding, the provisions of § 33 should be considered in connection with § 28 of the Negotiable Instruments Act (380 of the Code of Commerce) which really operates as an exception or limitation on the scope of § 33. Section 28 provides that:

"Where the holder has a lien on the instrument, arising either from contract or by implication of law, he is deemed a holder for value to the extent of his lien."

The transfer of a note as collateral security for the payment of a debt, is equivalent to the establishment of a lien on the instrument. Therefore § 28 is applicable, and the indorsement is valid, constituting a valid negotiation of the instrument insofar as the holder may recover judicially on the basis of the note to the extent of his lien, that is, up to

the amount guaranteed; in such a case, § 33 is not in point. Under § 28 a lien arises when a note is taken as collateral for an indebtedness contracted. 7 Am. Jur. 936, § 241; L.R.A. 1917 C. 842; 31 L.R.A. (N.S.) 299. We adopt the rule supported by the weight of authority to the effect that under the Negotiable Instruments Act, a holder who takes a negotiable paper for an antecedent debt is a holder for value to the extent of the debt, even though such taking is merely as collateral security. (80 A.L.R. 676). It is a case of negotiation by way of collateral security which is still valid although of limited effect. 8 Am. Jur. 39 § 300. The fact that the transfer has been made by guaranty does not imply that it is not to be deemed an indorsement. 8 Am. Jur. 41, note 14. An indorsement by guaranty is valid and the negotiation is likewise effective. 8 Am. Jur. 56, § 320. Prior to the adoption of the Uniform Negotiable Instruments Act there was a conflict of authority with respect to the validity and legal sufficiency of the transfer of a note as collateral security for a debt, but under the Uniform Act it is evident that the holder of a note transferred by guaranty has all the rights corresponding to a valid holder of the note. 8 Am. Jur. 188, § 440; Brannan, Beutel, *Negotiable Instruments Law*, 6th revised ed. p. 405, 406 and cases cited therein. The guaranty in the indorsement does not impair the negotiable character of the instrument. *International Harvester Co.* v. *Watkins*, 272 Pac. 139. The fact that the guaranty refers only to a part of the total amount of the note does not impair the validity of the indorsement. *Am. Nat. Bank* v. *Kerley*, 220 Pac. 116.

When a promissory note, on its face, shows that there has been an indorsement of the entire instrument, and there is an oral agreement that the indorsee would only have to pay partial interest on the note, such an agreement does not affect the negotiability of the note and the holder has legal title, § 33 of the Act not being applicable. *Slay*

v. *Wheeler*, 84 S. W. 2d 841; *Rockett* v. *Big Lake Bank*, 73 S. W. 2d 893. Commenting the case of *Slay* v. *Wheeler* in 49 Harv. L. Rev. 647 the following is stated in part:

"This decision illustrates the application of familiar principles to a novel factual situation. Although a 'split indorsement' does not operate as a negotiation of the instrument and results only in a partial assignment, the indorsement here was regular in form and therefore vested legal title to the whole note in the indorsee. The collateral agreement did not impair the negotiability of the note or prevent the indorsee from being a holder in due course, but merely fixed the beneficial interests between the parties. See I Daniel, *Negotiable Instruments* (7th ed. 1933) § 171."

In the case of *Haschenberger* v. *Dennis*, 225 N. W. 25, 26, 27 it was held that if there is an indorsement of the entire instrument, even if the indorsee only paid a part of the total amount payable, the indorsement is valid and the negotiation effective.

In the case of *In re Feldman's Estate*, 56 N. E. 2d 405, it was held that where the note was taken as collateral security, the holder thereof could recover only the debt which the note was intended to secure.

As we have already seen, § 33 which forbids partial indorsements, is inspired by the policy of avoiding the splitting of the cause of action to which the original promissory note gives rise. But this policy is overruled by the principle of § 28 which enlarges and promotes negotiability and free circulation of commercial instruments. This rule, founded on commercial convenience and supported by the majority of jurisdictions, we now adopt: the transfer of a note to secure a debt constitutes a valid negotiation and a valid indorsement. *Ramish* v. *Woodruff*, (Cal.) 28 P. 2d 360, 91 A.L.R. 684, 689; 34 Yale L. J. 144, 158; 72 Penn. L. Rev. 296 *et seq.* As to the argument that a different contract would ensue, the truth is that the indorsee had the intention of indorsing, that is, of transferring or negotiating,

even if the indorsement operated as a guaranty, which shows the validity of the negotiation.

█ In view of the foregoing, the trial court acted correctly in sustaining the validity of the indorsement and of the negotiation. Appellant alleges that the indorsement was obtained under duress because of Justina Rivera's fear that her son might be criminally prosecuted for failing to return to plaintiff the amount due for certain merchandise. Justina Rivera's indebtedness to plaintiff, admitted and guaranteed by the indorsement of the note, arose from her son's debt to plaintiff. This notwithstanding, and even assuming, without deciding, that for the purpose of the Negotiable Instruments Act, the threat of criminally prosecuting a son of the indorser, unless indorsement were made, renders the indorsement void because it has been obtained under duress (*Cf.* 8 Am. Jur. 292, § 586, note 1; Brannan, Beutel, *op. cit.*, p. 604, *et seq.*, § 55) there was no evidence whatever in the instant case to the effect that there had been such threats, or that such fear was the effective cause of the indorsement.

█ The trial court acted correctly in dismissing the counterclaim based on the alleged "wrongful" attachment by plaintiff in the instant case. In thus sustaining the complaint, there is no margin for an action for damages for wrongful attachment, when the attachment is incidental to and a consequence of the complaint itself which has been sustained. It was an essential prerequisite that plaintiff obtain a favorable judgment in this suit. *Martí* v. *Hernández*, 57 P.R.R. 804; *Sosa* v. *Heirs of Morales, supra.*

The judgment appealed from will be affirmed.

Mr. Justice Sifre concurs in the result.