OPINION OF THE COURT
Shanley N. Egeth, J.
Plaintiff commenced each of these separate actions to recover the sum of $55,260, plus interest from November 19, 1976, from the defendant in each action.
The facts and issues in each action are identical. When the actions were reached for trial without jury before me, I sua sponte combined the cases for a single trial and joint disposition, with the consent of all parties.
In each action the plaintiff attorneys seek the accelerated *851 balance plus accrued interest, claimed to be due from the respective defendants pursuant to certain promissory notes. The defendants have impleaded the United States Government, to dispose of its claims against the proceeds of these notes which were asserted by the filing of an Internal Revenue Service tax lien.
At trial most of the salient facts were agreed to and encompassed in a written stipulation executed by all parties. Testimony was heard to determine the additional relevant facts which were in dispute.
AGREED FACTS
On July 25, 1974, one Robert M. Gray (hereinafter referred to as "Gray,” who was the taxpayer against whom the United States Government tax levy was assessed and the subject tax lien filed) sold his stock in two corporations to the two defendants herein for a total price of $180,000. Each defendant executed two promissory notes, each in the sum of $45,000 pursuant to a pledge agreement to secure payment of the purchase price. Defendants delivered the notes to an escrowee, Chagents, Inc., which also received the purchased stock in escrow.
Subsequent thereto, on March 19, 1975, Gray entered into an agreement with Acli International Incorporated (ACLI) with the knowledge and consent of the defendants herein, and of the escrowee, whereunder he assigned his interest in all of the notes as collateral to secure payment of a prior $60,000 indebtedness due ACLI and one of its employees, which was to be paid in 15 monthly installments of $4,000 each. In implementation of this assignment for security, Gray indorsed all four notes to the order of ACLI, and the notes were delivered to ACLI, which retained possession thereof until August 24, 1976, a date following Gray’s full payment and satisfaction of his obligations under the ACLI agreement.
On November 5, 1975, when a total of $135,000 in principal indebtedness remained due on the notes sued upon herein, and said notes still were in the possession of ACLI as collateral for payment of the $28,000 then unpaid balance of its original $60,000 obligation, Gray entered into an agreement with the plaintiff herein, a law firm, and its client, Hyman. It was agreed to extend note payments on a prior indebtedness due to Hyman from Gray, settle a prospective lawsuit, and collateralize the moneys thus due with an assignment of *852 Gray’s interest in the notes. This agreement also assigned the notes and the pledge agreements securing them to the plaintiff in behalf of Hyman, subject and subordinate to the prior collateral assignment in favor of ACLI. Defendants and ACLI were notified of this assignment and they were requested and authorized to deliver the collateral to plaintiff herein after ACLI was paid.
Subsequent thereto, on August 24, 1976, ACLI acknowledged to the escrowee that it had been paid, and delivered the notes sued upon to the plaintiff. ACLI did not indorse the notes to the order, of plaintiff, and as of the date of trial no such indorsement was placed upon the notes. The following day, August 25, 1976, Gray, the defendants, the escrowee and the plaintiff executed written acknowledgments of the assignment of the notes and pledge agreements by Gray to the plaintiff and the latter requested payment from the defendants of the next installment due on October 1, 1976.
Prior thereto, on April 5, 1976, the Internal Revenue Service (IRS) assessed a delinquent income tax liability against Gray, and thereafter, on August 4, 1976, the IRS filed a notice of tax lien in the sum of $67,862.26 against Gray in the City Register’s office. The escrowee received a notice of levy from the IRS, dated September 10, 1976. On September 17, 1976 said escrowee wrote the plaintiff notifying it of the tax lien and enclosing a copy of the notice of levy. Plaintiff received this on September 20, 1976, and immediately wrote to the escrowee that the Government lien was ineffective to curtail its right to receive the note proceeds, and demanded payment thereof.
The payment due on October 1, 1976 was made to the IRS by the escrowee. On October 5, 1976, the plaintiff mailed a notice declaring a default due to failure to make the October payment, and an intention to accelerate the entire unpaid balance if payment were not made within 30 days. No payment was made, a demand for full payment was made by letter dated November 8, 1976, and this action was commenced on November 19, 1976.
DETERMINED FACTS
Testimony was taken to determine certain necessary and material facts which were not agreed to in the stipulation of the parties. As a result thereof, this court finds that on November 5, 1975, there was an existing indebtedness due to *853 Hyman from Gray which the parties sought to collateralize by the assignment and agreement executed on said date. Plaintiff was made nominee and party thereto for the benefit of its client, Hyman. All parties conceded on the record that the letter of September 20, 1976 was the first notice received by Hyman or the plaintiff of the existence of the IRS lien.
ISSUES RAISED
Three issues require resolution to determine the rights of the parties:
1. The validity of the assignment to plaintiff;
2. The extent, if any, that the IRS tax lien impairs plaintiff’s right to the proceeds of the notes; and
3. The right of plaintiff to declare an acceleration of the entire balance then due.
DETERMINATION
1. Plaintiff, as nominee for its client, Hyman, acquired a valid collateral assignment as to the proceeds of the notes herein to the extent that they were not required to satisfy the prior security interest of ACLI.
 2. Plaintiff attained a perfected security interest in said note proceeds prior to notification of the IRS tax lien. The plaintiff’s interest in the notes is therefore unaffected by the lien.
3. Plaintiff had no legal status which would authorize it to declare an acceleration of the unpaid note balance.
EFFECT OF ASSIGNMENTS
At the time Gray collateralized the $60,000 due to ACLI by executing a collateral assignment and pledge agreement as to the proceeds of $180,000 in notes, he did not irrevocably divest himself of the ultimate right to all of the proceeds of said notes. He retained ownership of all proceeds not required to satisfy the ACLI obligation. The indorsement and negotiation by Gray to ACLI of all of the notes did not change this relationship. The entire proceeds of the notes held as collateral were available to satisfy the ACLI obligation, but ACLI was entitled to only $60,000 of the $180,000 potential proceeds therefrom. This transaction only created a partial assignment of such proceeds (Uniform Commercial Code, §§ 3-201; 3-202, *854 subd [3]; Blake v Weiden, 291 NY 134; Porter v Lane Constr. Corp., 212 App Div 528, affd 244 NY 523; 3 Williston, Contracts [3d ed], § 441, subd 3). The negotiation of all of the notes and the simultaneous execution of the collateral assignment and pledge agreement compels the reading of all of the documents together to define the relationship created thereby. This was directly determined by the Court of Appeals in Bank of Amer. v Waydell (187 NY 115, 120), where the opinion of the unanimous court states in part: "It is true that the paper came to plaintiffs hands by general indorsement from Ives & Son, but the indorsement and the letter of advice in transmission must be read together, and so reading them the legal effect was to make the indorsement restrictive and the same in character as if the contents of the letter had been incorporated in the indorsement.” Accordingly, the negotiation of all of the notes actually conveyed less than the entire unpaid residue or entire instrument, and it therefore "operates only as a partial assignment.” (Uniform Commercial Code, § 3-202, subd [3].)
The limited interest thus acquired by ACLI was a security interest subject to the terms of the secured transaction (Uniform Commercial Code, § 3-201, subd [2]; § 3-302, subd [4]). Gray still retained ownership of the unneeded remainder of the note proceeds (Uniform Commercial Code, § 9-311; National Bank of Bay Ridge v Albers, 244 App Div 127). This interest was a right to future performance from the defendants on the notes, but that right to performance was due pursuant to an obligation in existence at the time of, and immediately after the ACLI assignment. Gray, therefore, retained an existing property right in the notes following the ACLI assignment (Williams v Ingersoll, 89 NY 508; Matter of Holt, 28 AD2d 201).
The interest retained by Gray as to the proceeds of the notes assigned to ACLI was real, existing and substantial. It was a claim or demand based upon the notes which was capable of being transferred to a third party (General Obligations Law, § 13-101).
This is the interest which was transferred by collateral assignment to plaintiff by Gray on November 15, 1975. The documents of assignment executed on said date created a valid security interest in the plaintiff as to Gray’s residuary interest in the notes (Uniform Commercial Code, § 9-204, subd [1]; § 1-201, subds [3], [37], [44]). Plaintiff did not have possession of *855 the notes at that time. Plaintiff did not therefore acquire a perfected security interest until August 25, 1976, when (by virtue of the delivery of the notes from ACLI to plaintiff) the security interest was perfected by possession (Uniform Commercial Code, § 9-305).
TAX LIEN DOES NOT ATTACH
Under the governing provisions of the United States Code, the tax lien filed by IRS fails to create any government right which is superior to that of the plaintiff as to the balance due on the notes at issue in this action (US Code, tit 26, § 6323, subd [b], par [1], cl [B]; § 6323, subd [h], pars [1], [4]).
Section 6323 of title 26 of the United States Code, entitled "Validity and Priority Against Certain Persons,” reads in relevant part as follows:
"[b] Protection for certain interests even though notice filed. Even though notice of a lien imposed by section 6321 has been filed, such lien shall not be valid * * *
"[1] Securities. With respect to a security (as defined in subsection [h] [4]) * * * [notes in this case are within the definition]
"[B] as against a holder of a security interest in such security who, at the time such interest came into existence, did not have actual notice or knowledge of the existence of such lien.”
Security interest is defined in section 6323 (subd [h], par [1]) of title 26 of the United States Code, as follows: "Security interest. The term 'security interest’ means any interest in property acquired by contract for the purpose of securing payment or performance of an obligation or indemnifying against loss or liability. A security interest exists at any time [A] if, at such time, the property is in existence and the interest has become protected under local law against a subsequent judgment lien arising out of an unsecured obligation, and [B] to the extent that, at such time, the holder has parted with money or money’s worth.”
The facts stipulated to and determined upon trial cloak the plaintiff with the statutory protection against the impact of the filed IRS lien. It has heretofore been stated that the notes involved herein are encompassed within the definition of security in section 6323 (subd [h], par [4]) of title 26 of the *856 United States Code. Plaintiff falls within the statutory definition of a holder of a "security interest.”
The agreement of November 5, 1975 and the simultaneously executed assignment of note proceeds constituted the plaintiff a holder of a security interest under New York State law (Uniform Commercial Code, § 9-204, subd [1]), but did not at that time create that status which was afforded protection by the United States Code. Plaintiff did not attain such protected status until August 25, 1976 when the security interest was perfected upon receipt of possession of the notes (Uniform Commercial Code, § 9-305). Until perfection of the security interest plaintiff’s interest was not "protected under local law against a subsequent judgment lien arising out of an unsecured obligation.” (US Code, tit 26, § 6323, subd [h], par [1], cl [A].) As of said date plaintiff met the requirements of section 6323 (subd [b], par [1], cl [A]).
Despite the contrary contention of the government, plaintiff complies with the requirements of clause (B) of said definition. The plaintiff law firm is merely a nominee for the actual party in interest. This relationship is clearly defined in the November 5, 1975 agreement. This court has found at trial that the assignment and security interest was created to collateralize a substantial obligation due to Hyman. This obligation, specified in the contract creating the security interest, certainly meets the requirement of clause (B) in the statutory definition concerning the parting with "money or money’s worth”. It should not seriously be argued that Hyman would be divested of her secured status which she bargained for, and to which all other then interested parties assented, because she chose to have her attorneys act as her designee and handle the mechanical details in her behalf. It would be equally frivolous to insist that she was required to execute an intermediate assignment of interest to her attorneys to enable the plaintiff to enter into the very same agreement as a principal in order to preserve the contemplated secured status. This provision of the United States Code is designed to assure consideration for the security interest. It is well established that consideration for a negotiable instrument or a contract may be given or performed by a third party and may consist of bestowal of a benefit, forbearance therefrom, or acceptance of a detriment. (Goldberg v Rothman, 66 Misc 2d 981; Sutta v Lachman, 13 NYS2d 779; 9 NY Jur, Contracts, §§ 76, 87, 96.)
*857 All parties concede that neither the plaintiff nor its principal received notice of the tax lien until September 20, 1976. Therefore, on August 25, 1976, when the security interest in the notes became perfected, the plaintiff was in compliance with the requirements of the United States Code, and thereupon acquired protection against the impact of the filed IRS tax lien.
NO VALID ACCELERATION OF NOTES OCCURRED
Plaintiff contends that the entire unpaid balance, plus interest, is due on all notes by virtue of its exercise of an option contained therein to accelerate payment because of the default in failing to make the October 1, 1976 installment payment. This court holds that neither the plaintiff nor its principal, Hyman, had status to effect an acceleration of the notes in accordance with the terms thereof.
It is undisputed that each note contains a valid enforceable acceleration clause authorizing an acceleration of payment of the entire then unpaid balance after a default in payment, at the option of the holder of the note. Plaintiff, however, does not possess the status required to demand an acceleration under the terms of the notes. Plaintiff is an assignee of a collateral interest in the proceeds of the notes, and a holder of a "security interest” in the notes pursuant to the provisions of subdivision (h) of section 6323 of title 26 of the United States Code. Plaintiff is not a holder of the negotiable instrument as that term is defined in subdivision (20) of section 1-201 of the Uniform Commercial Code.
To determine the rights and status of various parties to negotiable instruments, one should examine the definition of terms contained in the applicable statute. Subdivision (20) of section 1-201 of the Uniform Commercial Code provides that to become a "holder” of such an instrument, one must be “a person who is in possession of * * * an instrument * * * issued or indorsed to him or to his order or to bearer or in blank.”
In this case ACLI delivered possession of the notes to the plaintiff, but never indorsed them over to the order of the plaintiff. As of the date of trial the notes still contained an indorsement to the order of ACLI. Plaintiff became an assignee of the notes by virtue of its instrument of assignment, and upon receipt of the notes without an ACLI indorsement *858 plaintiff became a transferee thereof (Uniform Commercial Code, § 3-202, subd [1]). As transferee, plaintiff has the right to demand and receive from ACLI the necessary indorsement (Uniform Commercial Code, § 3-201, subd [1]). Until such time as ACLI’s indorsement is procured, there will be no negotiation of the instrument, and as a result no status of "holder” of the instrument will be created (Uniform Commercial Code, § 3-202, subds [1], [2]; § 3-204, subd [1]; § 3-205; § 3-206, subd [1]; § 1-201, subd [20]).
DECISION
 Plaintiff is entitled to receive the October 1, 1976 payment due on each note, plus all other payments due as of this date, together with all interest accrued from the due date of each payment to the time of actual payment. The plaintiff is not entitled to an acceleration of the note payments because it did not attain the necessary status of a "holder” of the notes. Plaintiff’s right to the note proceeds is free of any encumbrance arising out of the tax lien filed by the IRS against Gray. Defendants are entitled to the return of the moneys which they erroneously paid to the Government in October, 1976. Plaintiff may enter an appropriate judgment if payment is not made within seven days after service of a copy of this decision.