Norman M. BRUCE, et al., Plaintiffs,

v.

Thomas A. MARTIN, et al., Defendants.

No. 87 Civ. 7737 (RWS).

United States District Court,
S.D. New York.

July 15, 1988.

Beigel & Sandler, New York City, for plaintiffs; Lewis S. Sandler, Chicago, Ill., of counsel.

Spengler Carlson Gubar Brodsky & Frischling, New York City, for The Kinderhill defendant; Robert S. Carlson, Richard P. Swanson, Maria L. Ciampi, of counsel.

## OPINION

SWEET, District Judge.

Defendants Thomas A. Martin ("Martin"), Jack R. Orben ("Orben"), Kinderhill Corporation ("Kinderhill"), Kinderhill Se-

lect Bloodstock, Inc. ("Kinderhill Select"), Kinderhill Financial Services ("KFS"), Kinderhill Investment Company ("KFC") and the 25 Kinderhill partnerships (the "limited partnerships") (collectively, the "Kinderhill defendants"), have moved to dismiss the plaintiffs' complaint under Fed. R.Civ.P. 12(b)(6) for failure to state a claim upon which relief can be granted under: (i) Section 17 of the Securities Act of 1933 ("Securities Act" or "33 Act"), 15 U.S.C. § 77q; (ii) Section 10(b) of the Securities Exchange Act of 1934 ("Exchange Act" or "34 Act"), 15 U.S.C. § 78j(b), and Rule 10b–5 promulgated thereunder, 17 C.F.R. § 240.10b–5 (collectively, "10(b)"); (iii) the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. §§ 1962 and 1964(c) and (d); and (iv) Sections 12(1) and 12(2) of the Securities Act, 15 U.S.C. § 77l. The defendants have also moved under Fed.R.Civ.P. 9(b) to dismiss all of the claims for failure to plead fraud with particularity. Upon the findings and conclusions set forth below, the motion is denied except with respect to plaintiffs' claims under Section 17(a) of the Securities Act and under RICO, which are dismissed.

*The Parties and the Complaint*

Since 1975 defendants Kinderhill and Martin have served as a general partner of over 30 limited partnerships, the business of which was to breed thoroughbred mares, to raise and sell the offspring, and, in some cases, to race the offspring. The plaintiffs are limited partners in the 25 defendant limited partnerships who purchased one or more "units" in the defendant partnerships from 1980 to 1986 (the "plaintiffs"). The assets of each partnership upon formation consisted of limited partners' notes, several thoroughbred broodmares, interests in thoroughbred stallions and, to a lesser extent, thoroughbred horses in training. Each partnership has a stated term of somewhat in excess of five years.

The complaint alleges that Martin was, at all relevant times, the president and chief executive officer of Kinderhill and Kinderhill Select and a controlling shareholder of those two companies, KIS and KIC. Orben is alleged to be a close business associate of Martin and a director of both Kinderhill and Kinderhill Select. Two nonmoving defendants, National Union Fire Insurance Corporation ("National") and Reliance United Pacific Surety Managers, Inc. ("Reliance") are surety companies with whom plaintiffs entered into indemnity agreements in connection with their purchase of limited partnership interests.

The complaint [1] alleges that, from in or about 1980 to May 1986, the defendants engaged in a scheme to defraud the plaintiffs which consisted of: (a) inducing initial investors to invest, or existing limited partners to continue to invest, in the defendant limited partnerships through misrepresentations and nondisclosures contained in private placement memoranda; (b) engaging in excessive interpartnership transactions in which partnership assets were purportedly sold to newly formed partnerships at artificial prices for no reasonable business purposes and in such a way as to insulate the partnerships from actual public market prices; (c) siphoning funds from the limited partnerships to the defendants; and (d) successively pledging and assigning to banks promissory notes executed by limited partners and pyramiding the notes by using funds acquired from such assignments to acquire assets from existing limited partnerships under Martin's control, which assets were in turn pledged to banks for additional financing.

The complaint alleges the following specific misrepresentations and omissions in the private placement memoranda pursuant to which the partnership units were sold:

(a) the partnership intends to use borrowed capital in reasonable amounts;

(b) the partnership intends to market its young horses either as weanlings or yearlings ... through the normal public and private channels ..., and

---

**1.** On October 29, 1987, the plaintiffs filed a complaint against defendants Kinderhill, Martin and National. The complaint was amended for the first time on December 14, 1987 to add additional plaintiffs and Reliance as a defendant. On January 22, 1988, the plaintiffs filed a second amended complaint which added the limited partnerships as defendants.

(c) the success of the venture is closely related to the state of the economy. (Compl. ¶ 38).

The complaint alleges that such representations were false in that:

(a) borrowed capital for previous partnerships was not in reasonable amounts in that assets were pledged for money which was used for the acquisition of assets which were again pledged, and the defendants intended to continue this practice;

(b) bloodstock transactions were not conducted through the normal public and private channels as described in detail in paragraphs 7–18 above, and defendants intended to continue that pattern of conduct; and

(c) the success of the venture was not closely related to the state of the economy but entirely dependent on the continuation and enlargement of the ponzi scheme as described in paragraphs 7–18 above [interpartnership transactions.] (Compl. ¶ 39).

The complaint also alleges that the private placement memoranda failed to disclose, *inter alia*, that:

(a) the modus operandi of the limited partnerships was to engage in repeated bloodstock transactions with other Martin controlled limited partnerships, including the purchase of units in other such limited partnerships;

(b) the select bloodstock market was dependent on heavy foreign investment;

(c) by 1984 public auction prices at the high end were grossly out of proportion to earnings that could be achieved by racing;

(d) by 1981 there was substantial overproduction in the yearling market, and prices were already beginning to decline for less expensive horses;

(e) as a result of factors such as those described in paragraphs (c) and (d) above, investments in the high end of the bloodstock market were subject to special and increased risk;

(f) transactions between Martin controlled partnerships at appraised values did not necessarily relate to true market values;

(g) appraisals of bloodstock are inherently unreliable and vary greatly from appraiser to appraiser;

(h) appraisers were not normally used in the bloodstock market to set or establish a price for purchase or sale;

(i) the transfer of stallion shares and seasons were at prices solely determined by Martin;

(j) Martin appropriated in excess of $1,000,000 of partnership capital for his personal benefit without any benefit to the limited partnerships;

(k) bloodstock of Martin controlled limited partnerships purportedly sold at public auctions to third parties were in fact purchased by other Martin controlled limited partnerships; ... (Compl. ¶ 42).

In addition to the foregoing nondisclosures in the private placement memoranda, the complaint alleges a nondisclosure in connection with each plaintiff's required execution of an indemnity agreement with either Reliance or National. Reliance or National issued bonds to guarantee payment of each investor's promissory note to the limited partnerships. The complaint alleges that the defendants failed to disclose that the limited partnerships had agreed to indemnify the sureties so that the failure of any investor to pay his note would adversely affect every other limited partner in that partnership. (Compl. ¶¶ 105–110).

As a further part of the allegedly fraudulent scheme, the complaint alleges that Martin issued false financial statements for the years 1982 through 1986 which did not disclose the true extent of the interpartnership transactions, the true financial status of the partnerships and the likelihood of foreclosure on the bloodstock loans (Compl. ¶ 43). Additionally, plaintiffs allege that as part of the scheme, Martin mailed out solicitation letters and newsletters between 1980 and 1987 which tended to give a false financial picture of the limited partnerships (Compl. ¶ 41).

The complaint also alleges the respective roles of the defendants in the fraudulent scheme. Martin, Kinderhill and Kinderhill Select are alleged to be primary violators. Orben, KFS and KIC are alleged to be aiders and abettors, and KFS and KIC are alleged to be controlled by Martin. The complaint alleges that Orben, as a director of Kinderhill and Kinderhill Select, sold limited partnership interests "with knowledge of the misrepresentations and omissions in the private placement memoranda" (Compl. ¶ 47), "solicited investors ... to purchase units by a pattern of misrepresentations and omissions, including those set forth in paragraph 38–44" (Compl. ¶ 48) and "knowingly aided and abetted the fraudulent scheme ... by consciously engaging in conduct for the purpose of facilitating the fraud" (Compl. ¶ 47). KIC is also alleged to have "knowingly" aided and abetted the fraud by selling the limited partnership units with knowledge of the false and misleading private placement memoranda (Compl. ¶ 47). KFS is alleged to have aided and abetted the fraud by making loans, at Martin's direction, to certain limited partnerships at undisclosed premium rates "with knowledge" of the false and misleading statements in the private placement memoranda (Compl. ¶ 46). The complaint further alleges that all of the defendants, including Orben, KIC and KFS, participated in the preparation and distribution of the allegedly misleading private placement memoranda (Compl. ¶ 4) and that their actions were "both necessary to and a substantial factor in bringing about the transactions whereby each investor invested in the limited partnerships between 1980 and 1986" (Compl. ¶ 79). Finally, the complaint alleges that defendants' activities "constituted a proximate cause of the sale to investors of the limited partnership units between 1980 and 1986" (Compl. ¶ 80).

The complaint alleges that between 1980 and 1986, Martin "utilized his control of [the] partnership to create an artificial market for bloodstock by engaging ... in interpartnership transactions at artificially set prices for undisclosed reasons." (Compl. ¶ 11). As an example of the operation of the alleged fraudulent scheme, the complaint offers the following:

(a) in 1985, the 1981 Series limited partnership earned $288,500 from the sale of bloodstock of which at least $250,000 was earned from the sale of assets to another Martin controlled limited partnership. In addition, of $164,541 in stallion service income, at least $160,000 was generated from transactions with other Martin controlled limited partnerships;

(b) in 1984, the 1983 Series VI limited partnership earned $700,000 from the sale of bloodstock and stallion shares, all of which was derived from transactions with another Martin controlled limited partnership;

(c) in 1985, the 1983 Series I limited partnership earned $545,000 from the sale of bloodstock all of which was derived from transactions with other Martin controlled limited partnerships. In addition, all $15,000 of stallion service expenses was the result of transactions with another Martin controlled limited partnership;

(d) in 1982, the 1981 Series III limited partnership and the 1981 Series limited partnership acquired bloodstock from Kinderhill Farm Breeding Associates # 2, a Martin controlled partnership formed prior to 1980;

(e) in 1982, the 1981 Series III limited partnership and the 1982 Series III limited partnership acquired bloodstock from Kinderhill Farm Breeding Associates # 3, a Martin controlled partnership formed prior to 1980;

(f) the 1980 Series invested in Kinderhill Stables, an entity controlled by Martin; and

(g) in 1984, the 1981 Series II limited partnership earned $155,933 from the sale of bloodstock of which at least $139,500 was derived from transaction with other Martin controlled limited partnerships. (Compl. ¶ 18).

The complaint alleges that this scheme of interpartnership transactions caused the "total economic collapse" of the partnership and resulted in an almost "total loss of

the value of [the plaintiffs'] limited partnership interests." (Compl. ¶¶ 13, 17).

In late 1986, an exchange offer or "roll-up" was proposed to the limited partnerships by which all of the equine assets of the partnerships accepting the offer would be transferred to a new corporation, Kinderhill Select. In return, Kinderhill Select was to transfer to each limited partnership common stock in Kinderhill Select which would become the principal asset of each limited partnership. A vast majority of the limited partners approved the exchange offer and the assets of all but two of the 25 limited partnerships were "rolled-up" into Kinderhill Select.

The complaint alleges that the private placement memorandum used to effect the exchange offer contained material misrepresentations and omissions. The complaint asserts that the memorandum represented (1) that the valuation of Kinderhill was reasonable, whereas in fact it was inflated due to substantial qualifications placed on the appraiser's methodology and the fact that the actual value of bloodstock was far less than the appraised value (Compl. ¶¶ 56–57) and (2) that Kinderhill Select expected to meet its cash needs through external financing whereas in fact the banks were likely to refuse new loans or to foreclose (Compl. ¶¶ 56–57). The complaint also alleges that the memorandum failed to disclose, *inter alia,* that:

(a) the sales after June 30, 1986 would have a disastrous effect on the financial prospects of [Kinderhill] Select and the solvency of [Kinderhill] Select and the limited partnerships;

(b) the roll-up was necessary to avoid or forestall foreclosure of bloodstock by banks which had made loans secured by such bloodstock;

(c) the modus operandi of interpartnership transactions was the ponzi scheme as described above;

(d) the limited partnerships were for all practical purposes insolvent;

(e) the appraisals were not a reliable indicator of the fair market value of the bloodstock;

(f) there existed substantial decline of public market in prices for bloodstock;

(g) the exchange values were greatly inflated; . . . (Compl. ¶ 59).

According to the complaint, Kinderhill Select is now virtually insolvent (Compl. ¶ 28), the limited partnerships are essentially insolvent (Compl. ¶¶ 14–16), and plaintiffs, who invested per unit $30,000 cash and gave a $30,000 promissory note in payment of their partnership interests, have lost almost their entire investments (Compl. ¶ 13).

*The Motion to Dismiss*

■ On a motion to dismiss, the factual allegations of the complaint must be accepted as true, *Dwyer v. Regan,* 777 F.2d 825, 828–29 (2d Cir.1985), and the complaint must be liberally construed and its allegations considered in the light most favorable to the plaintiffs. *Scheuer v. Rhodes,* 416 U.S. 232, 236, 94 S.Ct. 1683, 1686, 40 L.Ed. 2d 90 (1974). A complaint should not be dismissed for insufficiency unless it appears to a certainty that the plaintiff is entitled to no relief under any state of facts which could be proved in support of the claim made. *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 101–02, 2 L.Ed. 2d 80 (1957). The question "is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." *Scheuer v. Rhodes,* 416 U.S. at 236, 94 S.Ct. at 1686.

*Fed.R.Civ.P. 9(b)*

■ Rule 9(b) provides: "In all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity. Malice, intent, knowledge and other condition of mind of a person may be averred generally." The rule is designed to assure defendants of "fair notice of what the plaintiff's claim is and the grounds upon which it rests," *Denny v. Barber,* 576 F.2d 465, 469 (2d Cir. 1978), to protect defendants from "the harm that comes to their reputations or to their goodwill when they are charged with serious wrongdoing," *Segal v. Gordon,* 467 F.2d 602, 607 (2d Cir.1972), and to inhibit the institution of strike suits, *Ross v. A.H.*

*Robbins Co.,* 607 F.2d 545, 557 (2d Cir. 1979). Ensuring fair notice is the primary purpose of Rule 9(b). As our Court of Appeals stated in *Goldman v. Belden,* 754 F.2d 1059, 1070 (2d Cir.1985), the rule requires no more than that the complaint give "each defendant notice of precisely what he is charged with." *See also Block v. First Blood Assocs.,* 663 F.Supp. 50, 51 (S.D.N.Y.1987) (Rule 9(b) is designed to "give the defendant fair notice of the claim so that he may frame a response to it"). As the court recently stated in *City of New York v. Joseph L. Balkin, Inc.,* 656 F.Supp. 536, 545 (E.D.N.Y.1987):

> The Second Circuit has repeatedly endeavored to reconcile Rule 9(b)'s particularity requirement with the principle that evidence need not be pleaded [citation omitted]. It is sufficient under Rule 9(b) if plaintiffs provide an adequate basis for their allegations to put them on notice of the nature of the claim.

Here, the complaint adequately gives notice of the alleged fraud.

The defendants assert that plaintiffs have not sufficiently connected the defendants to the alleged misrepresentations. However, the complaint identifies Martin, as being in control of all the Kinderhill defendants except Orben, who was a director of Kinderhill and Kinderhill Select, a close business associate of Martin and who is alleged to have sold limited partnership units with knowledge of and through the use of the misrepresentations in the private placement memoranda. All the defendants, it is alleged, "prepared, issued and distributed" the private placement memoranda (Compl. ¶ 4).

Where individual defendants are sued on the basis of the collective product of the group, specific allegations as to each are unnecessary. *DiVittorio v. Equidyne Extractive Indus., Inc.,* 822 F.2d 1242, 1247 (2d Cir.1987) ("no specific connection between fraudulent representations in [an] Offering Memorandum and particular defendants is necessary where, as here, defendants are insiders or affiliates participating in the offer of the securities in question.") (quoting *Luce v. Edelstein,* 802

F.2d 49, 55 (2d Cir.1986)). In a recent case involving allegations of fraud in connection with a limited partnership offering pursuant to a private placement memorandum, this court denied a Rule 9(b) motion where the complaint identified portions of the memorandum that the plaintiff claimed were fraudulent and alleged facts to support an inference of fraud. *Block v. First Blood Assocs.,* 663 F.Supp. at 52. This court reasoned that without "the benefit of any discovery [as here], plaintiffs need not allege the particular roles of each defendant allegedly involved in the preparation of a fraudulent Placement Memorandum." *Id.*

The defendants also contend that the complaint does not specify the misrepresentations, the documents in which they are found or the time and place they were made. However, the complaint alleges that the private placement memoranda were all prepared by defendants' attorneys and were "essentially identical" (Compl. ¶¶ 34, 36). Therefore, the allegations of omissions and misrepresentations in the private placement memoranda, referred to in paragraphs 38, 40 and 42, pertain to all the private placement memoranda issued in connection with the 25 Kinderhill limited partnerships, as specified in the Exhibit A annexed to and made part of the complaint. As the Court stated in *Luce v. Edelstein,* 802 F.2d 49, 55 (2d Cir.1986): "Reference to the Offering Memorandum satisfies 9(b)'s requirements as to identification of the time, place, and content of the alleged misrepresentations." Moreover, Exhibit A also indicates the limited partnership at issue, the year of the investment, the citizenship of the investor and the number of units purchased.

The complaint in this action is similar to the one upheld in *Fred Braun Corp. v. Smith,* Fed.Sec.L.Rptr. (CCH) ¶ 93,536 at 97,408 (S.D.N.Y.1987) [available on WESTLAW, 1987 WL 16595], where the Court stated:

> Defendants assert that the complaint fails to link [them] with any particular fraudulent statement made to any particular plaintiff. The complaint does specify, however, the allegedly fraudulent

statements contained in the ... offering memoranda. Plaintiffs' conspiracy allegations are sufficient to link the [defendants] to these allegedly fraudulent statements.... The complaint need not set forth evidentiary matters or every particular of plaintiffs' claims. At this juncture in the case, it is clear that defendants have been sufficiently appraised of plaintiffs' claims so as to enable them to frame their answer and to plan their defense.

Here, the complaint fully and fairly states claims against Martin, Kinderhill and Kinderhill Select for primary violations of the securities laws.

■ Defendants also argue, however, that plaintiffs' claims against Orben, KIC and KFS, based upon aiding and abetting, are deficient. In order to comply with the requirements of Rule 9(b) as it applies to their aiding and abetting claim, the plaintiffs must allege, in addition to a primary violation of the securities laws, (1) knowledge or scienter on the part of each defendant and (2) the rendering of substantial assistance by each defendant in furtherance of the fraud or violation. *Armstrong v. McAlpin,* 699 F.2d 79, 91 (2d Cir.1983).

Under Rule 9(b), intent and knowledge may be averred generally. *Goldman v. Belden,* 754 F.2d at 1070. Because "a plaintiff realistically cannot be expected to plead a defendant's actual state of mind," only a "minimum factual basis" for a plaintiff's "conclusory allegations of scienter" is required. *Connecticut Nat'l Bank v. Fluor Corp.,* 808 F.2d 957, 962 (2d Cir. 1987).

In *In re Coleco Securities Litig.,* 591 F.Supp. 1488, 1490 (S.D.N.Y.1984), the court found a sufficient factual basis for scienter was found where the complaint alleged that the defendants had knowledge of the false statements due to their management positions. In *IIT, Int'l Invest. Trust v. Cornfeld,* 619 F.2d 909, 923 (2d Cir.1980), the complaint alleged the underwriter defendants knew or should have known of misrepresentations in the prospectus. Since the complaint also alleged five misrepresentations and omissions in the prospectus, "these gave the defendants sufficient notice of what they must meet, and the Rule itself says that knowledge 'may be averred generally.'" *IIT v. Cornfeld,* 619 F.2d at 924.

■ Here, the complaint alleges that Orben was a director of the primary parties, Kinderhill and Kinderhill Select, and that he participated in the sale of limited partnership units "with knowledge" of the misrepresentations and omissions in the private placement memoranda (Compl. ¶ 47). It is further alleged that he solicited investors through a "pattern of misrepresentations and omissions" including those alleged to be in the memoranda (Compl. ¶ 48), and that he aided and abetted the scheme "by consciously engaging in conduct for the purpose of facilitating the fraud." (Compl. ¶ 47). With respect to KIC and KFS, it is alleged that Martin "exercised total control of these companies and directed their activities at his discretion" (Compl. ¶ 6). Those companies are alleged to have "consciously engaged in conduct for the purpose of facilitating the fraud," including selling limited partnership units and making loans to limited partnerships, "with knowledge of the misrepresentations and omissions in the private placement memoranda" (Compl. ¶¶ 46-47). These allegations provide an adequate basis for the claim of scienter on the part of Orben, KIC and KFS.

Finally, with respect to the claim of substantial assistance, the complaint alleges that these aider and abettor defendants participated in the preparation and distribution of the private placement memoranda (Compl. ¶ 4), sold units in the limited partnerships (Compl. ¶¶ 46-48), and procured loans for the limited partnership (Compl. ¶ 47), all with knowledge of the misrepresentations and omissions in the private placement memoranda (Compl. ¶¶ 46-48) and under the direction or control of Martin. Such allegations are sufficient to allege substantial assistance. *See Rolf v. Blyth, Eastman Dillon & Co.,* 570 F.2d 38, 48 (2d Cir.), *cert. denied,* 439 U.S. 1039, 99 S.Ct. 642, 58 L.Ed.2d 698 (1978). The case relied upon by defendants, *Morgan v. Pru-*

*dential Group*, 81 F.R.D. 418 (S.D.N.Y. 1978), is not to the contrary. In *Morgan*, the aider and abettor defendants alleged to have participated with the primary defendant in the fraud had no relationship to the primary defendant; thus, there was no rational basis for the charge of participation. Here, by contrast, the aider and abettor defendants were all alleged to be affiliates and insiders or controlled by the primary violator in connection with their participation in the fraud.

The defendants' Rule 9(b) motion is addressed to each of the plaintiffs' eleven claims which are predicated on the complaint's allegations of fraud. As described above, in the context of the plaintiff limited partners' claims against the principal individuals and corporations involved in the sale of the limited partnership units at issue, not attorneys and accountants, *cf. Di-Vittorio v. Equidyne Indus., Inc.*, 822 F.2d at 1249, the complaint more than meets the requirements of Rule 9(b). To require plaintiffs in this type of case to plead specific statements, dates and places with respect to each defendant would be unnecessarily duplicative and inconsistent with the requirement of Fed.R.Civ.P. 8(a) that the complaint contain "a short and plain statement of the claim showing that the pleader is entitled to relief." *See Felton v. Walston & Co.*, 508 F.2d 577, 581 (2d Cir.1974) (Rule 9(b) must be reconciled with Rule 8). The motion to dismiss under Rule 9(b) is, therefore, denied.

*The Federal Securities Claims*

Plaintiffs' first and second causes of action against the defendants assert violations of Section 17(a) of the Securities Act and Section 10(b) of the Exchange Act. Defendants contend that, to the extent that the plaintiffs rely on Section 17(a), the first two claims must be dismissed for failure to state a cause of action since a private right of action does not exist under Section 17(a) of the Securities Act.

Section 17(a) of the 33 Act provides:

(a) It shall be unlawful for any person in the offer or sale of any securities by the use of any means or instruments of transportation or communication in inter-

state commerce or by the use of the mails, directly or indirectly—

(1) to employ any device, scheme, or artifice to defraud, or

(2) to obtain money or property by means of any untrue statement of a material fact or any omission to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading, or

(3) to engage in any transportation, practice, or course of business which operates or would operate as a fraud or deceit upon the purchaser.

15 U.S.C. § 77q. The Supreme Court has reserved no less than three times the issue of whether an implied right of action exists under Section 17(a). *See Herman & MacLean v. Huddleston*, 459 U.S. 375, 378 n. 2, 103 S.Ct. 683, 685 n. 2, 74 L.Ed.2d 548 (1983); *International Brotherhood of Teamsters v. Daniel*, 439 U.S. 551, 557 n. 9, 99 S.Ct. 790, 795 n. 9, 58 L.Ed.2d 808 (1979); *Blue Chip Stamps v. Manor Drug Stores*, 421 U.S. 723, 733 n. 6, 95 S.Ct. 1917, 1924 n. 6, 44 L.Ed.2d 539 (1975). Several circuit courts have held that Section 17(a) does not create a private right of action. *E.g., Currie v. Cayman Resources Corp.*, 835 F.2d 780 (11th Cir.1988); *In re Washington Power Supply Systems Securities Litig.*, 823 F.2d 1349 (9th Cir.1987) (*en banc*); *Brannan v. Eisenstein*, 804 F.2d 1041, 1043 n. 1 (8th Cir.1986); *Landry v. All American Assurance Co.*, 688 F.2d 381, 390 (5th Cir.1982). In the Second Circuit, however, the issue appears to be anything but settled.

In *Kirshner v. United States*, 603 F.2d 234 (2d Cir.1978), *cert. denied*, 442 U.S. 909, 99 S.Ct. 2821, 61 L.Ed.2d 274 (1979), the Court of Appeals held that Section 17(a) did create a private remedy for damages, stating "the language of § 17 is broad enough to imply a private right of action." *Kirshner*, 603 F.2d at 241. The Court relied on Judge Friendly's observation in *Securities and Exchange Commission v. Texas Gulf Sulphur Co.*, 401 F.2d 833 (2d Cir.1968), *cert. denied*, 394 U.S. 976, 89 S.Ct. 1454, 22 L.Ed.2d 756 (1969), that

"[o]nce it had been established ... that an aggrieved buyer has a private right of action under § 10(b) of the 1934 Act, there seemed little practical point in denying the existence of such an action under § 17—with the important proviso that fraud, as distinct from mere negligence, must be alleged." *SEC v. Texas Gulf Sulphur*, 401 F.2d at 867 (Friendly, J., concurring). However, since its decision in *Kirshner*, the Second Circuit has twice treated the existence of a private right of action under Section 17 as an open question. Thus in *Yoder v. Orthomolecular Nutrition Institute, Inc.*, 751 F.2d 555, 559 n. 3 (2d Cir.1985), Judge Friendly stated, "Our references in this opinion to the Securities Act are not intended as taking any position on whether there is an implied cause of action for damages for violation of § 17(a)." Commenting on *Kirshner*, Judge Friendly went on to note:

> In Kirshner ... this court held, in an opinion characterized by Professor Loss as being "with no analysis," ... that there was such a cause of action. This conclusion may be open to reexamination, however, in the light of the subsequent Supreme Court decisions noted above and Professor Loss' comparison of the differences among the provisions for civil liability contained in the 1933 and 1934 Acts, and his analysis of the legislative history of § 17.

*Id.; see also Zerman v. Ball*, 735 F.2d 15, 21 (2d Cir.1984) (dismissing securities claims on other grounds, the court stated, "we need not decide at this time whether there is ... a right of action" under § 17(a)).

Thus, the Supreme Court and, arguably, the Second Circuit have left open the question of whether a private right of action exists under Section 17(a). Several courts in this district have concluded that no private right of action exists under section 17(a). *See, e.g., Center Savings & Loan Ass'n v. Prudential–Bache Securities, Inc.*, 679 F.Supp. 274, 279 (S.D.N.Y.1988) (Haight, J.); *Beres v. Thomson McKinnon Securities, Inc.*, Fed.Sec.L.Rptr. (CCH) ¶ 93,395 at 97,072 (S.D.N.Y.1987) (Kram, J.) [available on WESTLAW, 1987 WL 16977];

*Anderson v. Lowrey*, 667 F.Supp. 105, 110 (S.D.N.Y.1987) (Sand, J.); *Feinberg v. Leighton*, Fed.Sec.L.Rptr. (CCH) ¶ 93,117 at 95,505 n. 1 (S.D.N.Y.1987) (Cedarbaum, J.) [available on WESTLAW, 1987 WL 6147] (dictum); *Ackerman v. Clinical Data, Inc.*, Fed.Sec.L.Rptr. (CCH) ¶ 92,207 at 91,569–71 (S.D.N.Y.1985) (Haight, J.) [available on WESTLAW, 1985 WL 1884]. Others have adhered to the holding in *Kirshner. See, e.g., Toberoff v. B–J, Inc.*, Fed.Sec.L.Rptr. (CCH) ¶ 93,611 at 97,740 (S.D.N.Y.1988) (Keenan, J.) [available on WESTLAW, 1988 WL 5355]; *Dannenberg v. Dorison*, 603 F.Supp. 1238, 1241–42 n. 5 (S.D.N.Y.1985) (Sprizzo, J.); *Funds of Funds, Ltd. v. Arthur Andersen & Co.*, 545 F.Supp. 1314, 1354 & n. 20 (1982) (Stewart, J.); *Savino v. E.F. Hutton & Co.*, 507 F.Supp. 1225, 1231 n. 4 (S.D.N.Y.1981) (Ward, J.). In a decision predating both *Yoder* and *Zerman*, this court, too, followed *Kirshner* as the then "present rule" in this Circuit. *See Automatic Catering, Inc. v. First Multifund for Daily Income, Inc.*, Fed.Sec.L.Rptr. (CCH) ¶ 98,254 at 91,-662 (S.D.N.Y.1981) (Sweet, J.).

Upon reexamining the issue, this court concludes that a private right of action should not be inferred under Section 17(a). As Judge Sand observed in revisiting this question in *Anderson v. Lowrey*, "*Kirshner* was decided on the premise that section 10(b) and section 17(a) are essentially identical." *Anderson v. Lowrey*, 667 F.Supp. at 109. Although Section 10(b) and Section 17(a) may often provide plaintiffs the same relief, there are practical differences between the two. First, the Supreme Court has held that, unlike under Section 10(b), scienter is not required under Section 17(a)(2) or 17(a)(3). *See Aaron v. S.E.C.*, 446 U.S. 680, 100 S.Ct. 1945, 64 L.Ed.2d 611 (1980). Second, while Section 10(b) expressly requires that the alleged fraud be "in connection with the purchase or sale" of a security, *see Blue Chip Stamps v. Manor Drug Stores*, 421 U.S. at 733–34, 95 S.Ct. at 1924–25, Section 17(a) prohibits fraud "in the offer or sale" of a security. Thus, the scope of Section 17(b)'s prohibition may be broader than that of Section

10(b). Finally, Professor Loss' examination of the legislative history—the primary indicator of an implied right of action, *see Touche Ross & Co. v. Redington*, 442 U.S. 560, 575–77, 99 S.Ct. 2479, 2489–90, 61 L.Ed. 2d 82 (1979)—reveals no congressional intent to create civil liability under Section 17. *See* L. Loss, *Fundamentals of Securities Regulation*, 1148–50 (1983). Therefore, to the extent that plaintiffs' claims rely on Section 17(a) of the Securities Act, they are dismissed.

■ Plaintiffs' federal securities claims are also premised, however, on Section 10(b) of the Exchange Act and Sections 12(1) and 12(2) of the Securities Act. As to these claims the complaint adequately states a cause of action. Although defendants contend that plaintiffs have failed adequately to plead that the alleged wrongful conduct of defendants proximately caused their injury, *see Wellman v. Dickinson*, 682 F.2d 355, 368 (2d Cir.1982), the complaint clearly alleges that the allegedly fraudulent memoranda induced plaintiffs to purchase units in the partnership, (Compl. ¶¶ 38, 79, 80), that fraudulent statements in the Kinderhill Select memorandum induced plaintiffs' acceptance of the exchange offer, (Compl. ¶ 22), and that the fraudulent acts of the defendants resulted in plaintiffs' losses, (Compl. ¶¶ 13, 17, 18, 50). Thus, plaintiffs have satisfied this Circuit's requirement that a plaintiff allege both loss and transaction causation. *See Bennett v. United States Trust Co. of New York*, 770 F.2d 308, 313 (2d Cir.1985), *cert. denied*, 474 U.S. 1058, 106 S.Ct. 800, 88 L.Ed.2d 776 (1986). Similarly, for the reasons stated above in the discussion under Rule 9(b), the plaintiffs have adequately asserted claims against Orben, FIC and FSC as aiders and abettors.

The plaintiffs' fourth, fifth and sixth causes of action allege that Martin, Orben, Kinderhill, Kinderhill Select, KIC, KFS and the limited partnerships violated Sections 5, 12(1) and 12(2) of the Securities Act. Section 12 of the Securities Act provides:

Any person who—

(1) offers or sells a security in violation of section 5, or

(2) offers or sells a security (whether or not exempted by the provisions of section 3, other than paragraph (2) of subsection (a) thereof), by the use of any means or instruments of transportation or communication in interstate commerce or of the mails, by means of a prospectus or oral communication, which includes an untrue statement of a material fact or omits to state a material fact necessary in order to make the statements, in the light of the circumstances under which they were made, not misleading (the purchaser not knowing of such untruth or omission), and who shall not sustain the burden of proof that he did not know, and in the exercise of reasonable care could not have known, of such untruth or omission,

shall be liable to the person purchasing such security from him, who may sue either at law or in equity in any court of competent jurisdiction, to recover the consideration paid for such security with interest thereon, less the amount of any income received thereon, upon the tender of such security, or for damages if he no longer owns the security.

15 U.S.C. § 77*l*. In their Section 12(1) claims, the plaintiffs assert that the defendants failed to register the limited partnership offerings and the exchange offer with the SEC in violation of the 1933 Act. (Compl. ¶¶ 74–85; 86–95). The defendants contend, however, that the plaintiffs have failed to assert facts that demonstrate that each defendant was a seller or offeror of securities or a "substantial participant" in the sale of securities.

Section 12 expressly states that only sellers or offerors of securities may be liable to those who purchase securities from them. 15 U.S.C. § 77*l*; *In re Gas Reclamation, Inc.*, 659 F.Supp. 493, 507 (S.D.N.Y.1987). To be liable, a defendant must have been the actual seller or offeror, or, at minimum, a substantial participant with a significant role in the "offer or sale" of the securities. *See Katz v. Amos Treat & Co.*, 411 F.2d 1046, 1053 (2d Cir.1969). In *Somerville v. Major Exploration, Inc.*, 576

F.Supp. 902, 913 (S.D.N.Y.1983), the court set forth the requirements for "seller" status within the meaning of Section 12. An individual is a seller if:

1) The individual is acting as the immediate seller's agent;

2) The individual is alleged to be a controlling person of the immediate seller; or

3) The individual actively participated in the sale, either as an aider and abettor or as a co-conspirator, or one under similar circumstances.

*Accord Katz v. Amos Treat & Co.,* 411 F.2d 1052–53.

■ Here, all the defendants are alleged to have participated in selling the units by distributing the private placement memoranda (Compl. ¶ 4). Moreover, Martin is alleged to be the controlling person of the limited partnerships, Kinderhill, Kinderhill Select, KFS and KIC. Similarly, Orben and KIC are alleged to have participated specifically in the sale of the limited partnership units. In the fifth claim, under Section 12(1), it is alleged that Martin, Kinderhill and Orben sold units in 26 limited partnerships; that "each of the defendants is a seller of the securities" (Compl. ¶¶ 75 and 81); and that defendants' activities "constituted a proximate cause of the sale to investors" (Compl. ¶ 80). In the sixth claim, under section 12(1), plaintiffs allege that the "defendants' activities ... were the proximate cause of the sale of securities of [Kinderhill] Select to the plaintiffs" (Compl. ¶ 91). Accordingly, the complaint alleges that these defendants are "sellers" within the meaning of Sections 5 and 12 of the Securities Act. The three cases cited by defendants, *In re Union Carbide Corp. Consumer Prods. Business Sec. Litig.,* 666 F.Supp. 547 (S.D.N.Y.1987); *Katz v. Amos Treat & Co.,* 411 F.2d 1046 (2d Cir.1969), and *Katz v. David W. Katz & Co.,* Fed.Sec.L.Rptr. (CCH) ¶ 99,669 (S.D.N.Y.1984) [available on WESTLAW, 1984 WL 2385], were all decided after extensive discovery. In the instant case, there has been no discovery, and the issue is solely the sufficiency of the pleading.

The motion to dismiss plaintiffs' claims under Section 10(b) of the 34 Act and Sections 12(1) and 12(2) of the 33 Act is denied.

*The RICO Claim*

The complaint's eleventh claim asserts a claim against all of the defendants under the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. §§ 1961–1968 ("RICO"). In order to state a claim under RICO, a plaintiff must allege "(1) that the defendants; (2) through the commission of two or more acts; (3) constituting a 'pattern'; (4) of 'racketeering activity;' (5) directly or indirectly invest[ed], or maintain[ed] an interest in, or participat[ed] in; (6) an 'enterprise'; (7) the activities of which affect interstate or foreign commerce." *Moss v. Morgan Stanley, Inc.,* 719 F.2d 5, 17 (2d Cir.1983), *cert. denied sub. nom., Moss v. Newman,* 465 U.S. 1025, 104 S.Ct. 1280, 79 L.Ed.2d 684 (1984). The defendants contend that the plaintiffs have not properly alleged all of the elements required to state a RICO claim.

The defendants maintain that the RICO claim must fall since the allegations of fraud upon which the RICO claim is based are insufficient under Rule 9(b). However, as indicated above, the securities fraud claims are well-stated and properly pleaded. The RICO count therefore cannot be dismissed on these grounds: "Allegations which are sufficient to sustain a claim of securities fraud may also ground a claim of 'racketeering activity' ". *In re Gas Reclamation, Inc. Securities Litigation,* 659 F.Supp. at 512; *cf. Conan Properties v. Mattel, Inc.,* 619 F.Supp. 1167, 1171 (S.D.N.Y.1985). As discussed above, the nature of the fraudulent scheme, the misrepresentations in the private placement memoranda and the dates of the investments and of the fraud are all set forth in detail in the complaint. In this respect, this case is distinguishable from *Newman v. L.F. Rothschild,* 651 F.Supp. 160, 162 (S.D.N.Y.1986), in which this court dismissed an investor's RICO claim against his broker because the allegations in the complaint as to mail and wire fraud did not specify the time, place, manner and contents of the mailings and telephone communications.

728

The RICO claim cannot stand, however, because the complaint fails to allege "the existence of an enterprise whose illicit activities or unlawful goals are continuing ones." *Creative Bath Products, Inc. v. Connecticut General Life Ins. Co.*, 837 F.2d 561, 564 (2d Cir.1988). Our Circuit has recently dismissed RICO claims where "the purpose of the enterprise alleged in [the] ... complaint had an 'obvious terminating goal or date.'" *Albany Ins. Co. v. Esses*, 831 F.2d 41, 44 (quoting *United States v. Ianniello*, 808 F.2d 184, 192 (2d Cir.1986), *cert. denied,* — U.S. —, 107 S.Ct. 3230, 97 L.Ed.2d 736 (1987)) (inducing insurer to pay false insurance claim); *see, e.g., Creative Bath Products*, 837 F.2d at 564 (inducing purchase of four insurance policies); *Beck v. Manufacturers Hanover Trust Co.*, 820 F.2d 46, 51 (2d Cir.1987) (sale of collateral located in U.S.). The Court of Appeals has also rejected the view that simply because the RICO "statute says that 'enterprise' includes partnerships, corporations, etc. ... all these entities always must be considered to be 'enterprises.'" *Furman v. Cirrito*, 828 F.2d 898, 903 (2d Cir.1987). In *Furman*, which involved an intra-partnership dispute over the sale of the partnership's assets, the Court held that "if an inquiry as to the necessary elements of continuity and relatedness is directed at the enterprise, then just being a partnership is not enough." *Id.*

Here, the factual allegations of the complaint, even when accepted as true for the purposes of this motion to dismiss, do not meet this Circuit's pleading requirements for the enterprise element of a RICO claim. The limited partnerships were by their terms limited to a duration of slightly more than five years. The objective of each private placement memorandum was to induce a one-time investment in the limited partnerships and to provide a tax-advantaged investment for the plaintiffs. The plaintiffs do not dispute that their short-term tax objectives in making these investments were fully realized during the first two years of each partnership's existence. Nor do the plaintiffs contend that the primary business of the Kinderhill defendants was not thoroughbred breeding and racing.

The plaintiffs' complaint simply alleges that in the conduct of their business the defendants committed certain acts of fraud. These acts, however, if proved, appropriately fall within the scope of and are adequately protected by the federal securities laws and established principles of common law fraud. As this court has stated recently, "civil RICO's treble damage provision was never intended to permit recovery for what amounts to common law fraud." *Bamco 18 v. Reeves*, 675 F.Supp. 826, 830 (S.D.N.Y.1987). Similarly, the specter of treble damages cannot be inserted as a bargaining chip into civil litigation arising out of investment schemes gone awry as a result of common law or securities fraud.

The complaint's deficiencies with respect to the enterprise element are not remedied by the conclusion in paragraph 121 of the Complaint that "the combination of defendants Martin, Kinderhill, [Kinderhill] Select, KIC, KFS and Orben constitutes an association in fact and is an 'enterprise' within the meaning of 18 U.S.C. § 1961(4)."

Upon the findings and conclusions set forth above, the motion to dismiss is denied except with respect to plaintiffs' claims under Section 17(a) of the Securities Act and under RICO, which are dismissed.

It is so ordered.