■ Louise Emery et al., Appellants-Respondents, v Fishmarket Inn of Granite Springs, Inc., et al., Respondents-Appellants, et al., Defendants.—In an action to foreclose a mortgage on real property, the plaintiffs appeal, on the ground of inadequacy, from so much of a judgment of the Supreme Court, Westchester County (Nastasi, J.), dated August 2, 1989, as "reduced" prejudgment interest from 18% to 9% of the principal amount due and fixed attorneys' fees at $15,500, and the defendants Fishmarket Inn of Granite Springs, Inc., and John Conte cross-appeal, as limited by their notice of appeal and brief, from so much of the same judgment as allowed the plaintiffs attorneys' fees.

Ordered that the judgment is modified, on the law, by deleting the provision thereof reducing interest on the principal to 9% per annum and substituting therefor provisions ratifying and confirming the report of the referee as to principal and interest and directing that interest from the date of the default to the date of the interlocutory judgment of foreclosure be fixed at $66,037.92, representing 18% of the principal amount due from August 17, 1987, until January 6, 1989; as so modified, the judgment is affirmed insofar as appealed and cross-appealed from, without costs or disbursements, and the matter is remitted to Supreme Court, Westchester County, for the entry of an appropriate amended judgment providing for statutory interest (see, CPLR 5004), from January 6, 1989.

The purchase money mortgage on which the plaintiffs sue secures payment of a $386,000 purchase price payable in two installments with interest fixed by the contract at 10%. The mortgage also provides, however, that "[f]ollowing a default, the mortgagee shall be entitled to the highest interest permitted under law and the mortgagor shall be responsible for all reasonable fees of foreclosure". Following joinder of issue in

this litigation, the plaintiffs successfully moved for summary judgment premised on the default of the mortgagors, a corporation and its principal, in paying the second installment, amounting to $286,000, and the matter was referred to a referee to compute the total amount due. The referee fixed interest from the date of default to the date of the January 6, 1989, interlocutory judgment of foreclosure at 18%, evidently on "equitable" grounds *(see,* CPLR 5001), and determined that attorneys' fees in the amount of $36,760 were due.

The plaintiffs moved to confirm the referee's report, including the determinations as to amounts of interest and attorneys' fees, while the defendants sought rejection of those determinations, urging that there was no contractual authorization for attorneys' fees, and that post-default interest should be fixed at 9% rather than the 18%. The Supreme Court reduced the post-default prejudgment interest rate to 9% *(see,* CPLR 5004) and held that the fixing of attorneys' fees was beyond the scope of the referee's duties. However, it ruled that attorneys' fees were nonetheless due pursuant to the terms of the mortgage, held a hearing on the issue of attorneys' fees, and ultimately fixed those fees at $15,500. The plaintiffs appeal, on the ground of inadequacy, from those portions of the final judgment which set prejudgment interest and attorneys' fees, while the defendants cross-appeal from that portion of the judgment which awarded the plaintiffs attorneys' fees.

We agree with the plaintiff that attorneys' fees are due pursuant to the terms of the mortgage *(see, Pregno Agency v Letterese,* 112 AD2d 1032; *see also, Equitable Lbr. Corp. v IPA Land Dev. Corp.,* 38 NY2d 516). However, since the amount awarded by the Supreme Court after a hearing bears a reasonable relation to the unrecovered principal and to the time and effort expended in the foreclosure action, we decline to disturb the attorneys' fees provision of the judgment.

We also agree with the plaintiffs that the Supreme Court erred in fixing prejudgment interest at the statutory rate generally applied to judgments *(see,* CPLR 5004). It is true that interest due prior to maturity of a debt is said to be due by virtue of the contract of payment but that interest due after maturity is due as damages for breach pursuant to statute *(see, Stull v Joseph Feld, Inc.,* 34 AD2d 655; *cf.,* CPLR 5004). It is also true, however, that the parties are free to provide for continuation of contract interest until the debt is paid or until the contract is merged in a judgment *(see, Citibank v Liebowitz,* 110 AD2d 615; *see also, Agriculver Profit*

*Sharing Plan v Dryden Mut. Ins. Co.,* 145 AD2d 811; *Stull v Joseph Feld, Inc., supra).* Moreover, so long as an interest rate is not usurious or does not constitute a penalty, the parties are similarly free to agree that the contract rate of interest shall increase upon default *(see, Union Estates Co. v Adlon Constr. Co.,* 221 NY 183; *see also, Libra Bank v Banco Nacional de Costa Rica,* 570 F Supp 870, 888-891).

The defendant mortgagors' contention that the provision of the mortgage entitling the plaintiffs to collect upon default "the highest interest permitted under law" is poorly drawn is not without some merit *(see, Libra Bank v Banco Nacional de Costa Rica, supra,* at 890). But while ambiguities in a contract are generally to be resolved against the drafter of the contract, the terms of a contract are also generally to be construed reasonably *(see,* 22 NY Jur 2d, Contracts, § 194). Had the parties intended that the defendant mortgagors, who agreed to pay interest at 10%, would pay interest at the lower statutory rate upon default, they could have manifested that intent by, *inter alia,* simply remaining silent on the issue of post-default interest *(cf., e.g., Stull v Joseph Feld, Inc., supra; see also, Union Estates Co. v Adlon Constr. Co., supra).* Instead, the parties made specific provision for post-default interest, thereby manifesting an intent that interest was to be fixed by contract at a rate higher than that which was due before default.

It is clear, and the defendant mortgagors concede, that the highest rate of interest allowed by General Obligations Law § 5-501 and Banking Law § 14-a, which at the time of default stood at 16%, has no bearing on the obligation of the defendant mortgagors to pay the plaintiffs for the purchase of the premises which were the subject of the mortgage *(see, Union Estates Co. v Adlon Constr. Co.,* 221 NY 183, *supra; see also,* General Obligations Law § 5-521; *Barone v Frie,* 99 AD2d 129). While it could be urged that virtually any rate of interest is lawful under a purchase money mortgage *(cf., Barone v Frie, supra),* to construe the interest provision in the default clause of the purchase money mortgage between the plaintiffs and defendant mortgagors as containing no ceiling would render that provision so vague as to be meaningless *(but see,* 22 NY Jur 2d, Contracts, §§ 191, 194, 221). Rather, it appears that post-default interest was not a direct expression of the purchase price *(see, Barone v Frie, supra; see also, Del Rubio v Duchesne,* 284 App Div 89), and was intended to be capped by laws prohibiting usury. The "highest interest permitted under law" is 25% per annum *(see,* Penal Law § 190.40; *see also,*

General Obligations Law § 5-501 [6]). However, not only did plaintiffs seek confirmation of the referee's report, *inter alia,* fixing interest at 18%; they have also by their notice of appeal limited their challenge to the Supreme Court's judgment to whether interest and attorneys' fees should have been "reduced". Any present claim by the plaintiff that the Supreme Court should have raised the rate at which post-default, prejudgment interest was awarded is not properly before us *(cf., Kennis v Sherwood,* 82 AD2d 847; *Christian v Christian,* 55 AD2d 613) and we therefore modify the judgment only to the extent indicated. Brown, J. P., Kooper, Harwood and Miller, JJ., concur.