**Norman BRUCE, et al., Plaintiffs,**

**v.**

**Thomas A. MARTIN, et al., Defendants.**

**George S. BOREY, et al., Plaintiffs,**

**v.**

**NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, PA., et al., Defendants.**

**Mike MALONE, et al., Plaintiffs,**

**v.**

**KINDERHILL CORPORATION, et al., Defendants.**

**Nos. 87 Civ. 7737 (RWS), 90 Civ. 0870 (RWS) and 90 Civ. 4651 (RWS).**

United States District Court, S.D. New York.

Feb. 24, 1994.

Beigel Schy Lasky Cohen Rifkind & Hennessey, New York City (Marilyn Neiman, of counsel), for plaintiffs.

D'Amato & Lynch, New York City (Lloyd J. Herman, of counsel), for National Union Fire Ins. Co. of Pittsburgh, Pa.

## OPINION

SWEET, District Judge.

Defendant National Union Fire Insurance Company ("National Union") has submitted an application for entry of judgment against numerous plaintiffs (collectively, the "Plaintiffs") in this matter, in which judgment they have requested approval by this Court of an interest rate of 24.9%. The Plaintiffs contest National Union's right to this rate of interest, and request the Court to fix the appropriate interest rate for the National Union judgment (the "Interest Rate"). For the following reasons, the Interest Rate will be set at 24.9%.

### Background

The facts, parties, and prior proceedings to the underlying action in this matter have

been described in full detail in prior opinions of this court, familiarity with which is assumed. *See, e.g., Bruce v. Martin,* 1993 WL 148904, 1993 U.S.Dist. LEXIS 5776 (S.D.N.Y. April 28, 1993) (the "April 28 Opinion"); *Bruce v. Martin,* 1992 U.S.Dist. LEXIS 12138 (S.D.N.Y. Aug. 13, 1992); *Bruce v. Martin,* 766 F.Supp. 200 (S.D.N.Y.1991); *Bruce v. Martin,* 691 F.Supp. 716 (S.D.N.Y. 1988). The background of these proceedings will therefore be described only to the extent necessary to answer the discreet question of the appropriate Interest Rate.

On April 28, 1993, this Court granted National Union summary judgment on its counterclaims against the Plaintiffs in this matter and dismissed the non-settling plaintiffs' claims against National Union. *See Bruce v. Martin,* 1993 WL 148904, 1993 U.S.Dist. LEXIS 5776 (S.D.N.Y. April 28, 1993). National Union's counterclaims consisted of contract claims based upon indemnification and pledge agreements executed by the Plaintiffs and a claim as a subrogee to the rights of the holders of promissory notes executed by the Plaintiffs (collectively, the "Notes").

Each Note provides for the accrual of interest on the defaulted principal amount of the Note at the highest rate legally permissible. National Union has taken the position that the interest rate chargeable following a default under the Notes is a rate just under 25%, the criminal usury ceiling. *See* N.Y.Penal L. §§ 190.40 & 190.42 (collectively, "Section 190").

On September 3, 1993, National Union submitted a proposed judgment to the Court. The proposed judgment is based upon National Union's claims as subrogee under the Notes. Argument was heard on the issue of the appropriate Interest Rate on September 15, 1993, and this matter was considered fully submitted as of that date.

### Discussion

The Plaintiffs oppose National Union's proposed Interest Rate of 24.9% on the grounds first that National Union did not plead in its counterclaims that it would seek interest on the defaulted promissory notes at 24.9%, and second that, since some of the Notes provide for default interest at the highest rate permitted by law while others

provide for the highest rate permitted by New York law, the Notes including the less restrictive language may be governed by the law of each plaintiff's state of residence.

██ National Union's counterclaims stated that National Union would seek interest, and the Notes provide that interest would accrue after the maturity date on the unpaid principal balance at the highest rate legally permissible. Further, the Notes do not contain choice of law clauses. *National Union Fire Insurance Co. v. Alexander,* 728 F.Supp. 192 (S.D.N.Y.1989), involved a suit very similar to the present case in which the issuer of financial guarantee bonds sued to enforce indemnity agreements between itself and limited partners in a tax shelter limited partnership, and to enforce its rights as subrogee on the limited partners' promissory notes which it honored on their behalf.

The Court, sitting in diversity, held that it was bound to look to New York choice of law principles to determine which state's law applied, and further held that, under New York law, the general rule is that a note is to be governed by the laws of the place where it is made, unless by its terms it is to be performed elsewhere. Since the notes in question called for payment in Texas, the Court held that Texas law applied. *National Union,* 728 F.Supp. at 199.

In the present case, the Notes require that payments be made in New York or some other place that the holder of the note designates. The Court applied New York to the interpretation of the Notes in the April 28 Opinion. *See Bruce v. Martin,* 1993 WL 148904 at *12–13, 1993 U.S.Dist. LEXIS 5776, at *39 (S.D.N.Y. April 28, 1993). Therefore the rate of interest shall be determined pursuant to New York law.

██ Plaintiffs also contend that National Union agreed to collect interest only under its Indemnification Agreements with the plaintiffs, rather than as subrogee to the Notes or, alternatively, that, as subrogee to the holder of the Notes, National Union is limited to recovery of the monies it paid to the noteholders and may not recover interest

in excess of what National Union paid to the noteholders.

■ This Court's April 28, 1993 opinion in this matter held that National Union could recover as subrogee of the noteholders. *Bruce v. Martin,* 1993 WL 148904 at *13, 1993 U.S.Dist. LEXIS 5776, at *40 (S.D.N.Y. April 28, 1993). A subrogee steps into the shoes of the subrogor and acquires his rights against the person whose debt was discharged. *Nacional Financiera, S.N.C. v. Americom Airlease, Inc.,* 803 F.Supp. 886 (S.D.N.Y.1992); *Salzman v. Holiday Inns, Inc.,* 48 A.D.2d 258, 369 N.Y.S.2d 238, 243 (1975), *modified on other grounds,* 40 N.Y.2d 919, 389 N.Y.S.2d 576, 358 N.E.2d 268 (1976).

In this case, the subrogor's rights included the right to collect default interest on the notes at the highest rate legally permissible. National Union is subrogated to, and has acquired, this right. The sole case cited in support of Plaintiffs' argument, *Lipkowitz & Plaut v. Affrunti,* 95 Misc.2d 849, 407 N.Y.S.2d 1010 (Sup.Ct.1978), did not involve subrogation, and is therefore inapposite.

■ Plaintiffs submit references to various New York State laws that provide that, unless otherwise specified, a provision for interest in a Note means interest at the judgment rate, and references to cases that hold that this rate is 9%. Here, the Notes provide for the "highest rate legally permissible." No authorities have been submitted to preclude such a definition.

The Plaintiffs have cited cases that have interpreted N.Y.G.O.L. § 5–501 ("Section 5–501") as fixing the maximum legal rate to be applied to a note, citing *Woodhouse, Drake & Carey, Ltd. v. Anderson,* 61 Misc.2d 951, 307 N.Y.S.2d 113 (Sup.Ct.1970) in particular. Section 5–501 provides for a rate of interest, currently 16% per annum, and forbids as usury the charging of interest above this rate on a loan or forbearance of money.

In *Woodhouse,* the New York Supreme Court considered a defense of usury by the maker of a note that called for interest at the rate of 8½% or at the maximum legal rate. The court held that the "maximum legal rate" in this case was determined by N.Y.G.O.L. § 5–501. However, the interest

sought to be charged in the present case is on notes that are in default. In *Manfra, Tordella & Brookes, Inc. v. Bunge,* 794 F.2d 61, 63 n. 3 (2d Cir.1986), the Second Circuit held that Section 5–501 does not apply to defaulted obligations, citing *American Express Co. v. Brown,* 392 F.Supp. 235, 238 (S.D.N.Y.1975), and *Bloom v. Trepmal Construction Corp.,* 29 A.D.2d 951, 289 N.Y.S.2d 447 *aff'd,* 23 N.Y.2d 730, 296 N.Y.S.2d 372, 244 N.E.2d 62 (1968).

This point was also made in *Giventer v. Arnow,* 73 Misc.2d 413, 341 N.Y.S.2d 661 (N.Y.Sup.1973), *rev'd,* 44 A.D.2d 160, 354 N.Y.S.2d 162 (1974), *and reinstated,* 37 N.Y.2d 305, 372 N.Y.S.2d 63, 333 N.E.2d 366 (1975). *Giventer* involved a promissory note in which interest was charged at the maximum rate allowed under Section 5–501, but was compounded quarterly, resulting in an annual rate higher than that provision allowed. The court stated that it was "mindful of those situations ... allowing additional interest charges after the maturity of the obligation," but that since this was not the situation in the case under consideration, the note violated Section 5–501. *Giventer,* 73 Misc.2d 413, 414, 341 N.Y.S.2d 661.

National Union argues that, rather than being limited by Section 5–501, the highest rate legally permissible is limited only by Section 190, which defines criminal usury as charging interest in excess of 25%. The Plaintiffs contend that, if according to *Manfra* the New York usury laws do not apply to defaulted obligations, then Section 190 should not apply any more than Section 5–501. With no legal limit to the permissible rate of interest, the Plaintiffs argue that the Notes' interest-fixing terms are ambiguous, and that the Court should therefore fix the rate at the judgment rate of 9%.

The conclusion that the Plaintiffs derive from *Manfra* is unsupported by the case law. *Manfra* did not address the applicability of Section 190 to defaulted obligations. Of the cases cited by *Manfra,* in *American Express,* the defendant on a suit brought to collect on a defaulted promissory note argued that the interest being charged in default thereon violated Section 190. This Court declined to consider this claim, because neither the

Court nor the defendant was authorized to enforce New York State's criminal usury law. *American Express*, 392 F.Supp. at 237–38. *Bloom* likewise did not address the applicability of Section 190 to defaulted obligations.

More relevant is the case of *Emery v. Fishmarket Inn*, 173 A.D.2d 765, 570 N.Y.S.2d 821 (1991). In *Emery*, the plaintiffs obtained summary judgment in a suit on a purchase money mortgage that provided that, following a default, the mortgagee would be entitled to the highest interest permitted under law. The case was referred to a referee, who set the interest rate from the date of default at 18%.

The Plaintiffs moved to confirm the referees' report, but the trial court reduced the interest rate to 9%, the statutory judgment rate. The Appellate Division held that the trial court erred in fixing prejudgment interest at the statutory rate generally applied to judgments.

The court then addressed an argument similar to the one pressed by the Plaintiffs here. The court first noted that Section 5–501 had no bearing on the obligation of the defendant mortgagors to pay the plaintiffs.[1]

The Court went on to state that, while it could be urged that virtually any rate of interest is lawful under a purchase money mortgage, to construe the interest provision in the default clause of the purchase money mortgage as containing no ceiling would render that provision so vague as to be meaningless. Instead, the court found that the interest rate was intended to be capped by laws prohibiting usury.

The court found that the "highest interest permitted under law" was the 25% per annum limit imposed by Section 190. Since the plaintiff only sought to confirm the referee's award of 18% interest rather than to raise the rate of interest to 25%, the court confirmed the 18% interest rate.

---

1. The court does not state the basis upon which it comes to this conclusion, but merely cites N.Y.G.O.L. § 5–521; *Union Estates Co. v. Adlon Constr. Co.*, 221 N.Y. 183, 116 N.E. 984 (1917); and *Barone v. Frie*, 99 A.D.2d 129, 472 N.Y.S.2d 119 (1984). From these citations, the court apparently felt that Section 5–501 did not apply to

Under *Manfra*, Section 5–501 is inapplicable to the defaulted obligations under the Notes. As in *Emery*, this does not leave the interest rate without a discernable cap. Rather, the interest rate is "capped" by Section 190 at 25% per annum.

### Conclusion

For the foregoing reasons, the Interest Rate applicable to the default amounts referenced in the National Union judgment shall be 24.9%.

It is so ordered.

limit the interest rate because the defendant was a corporation and thus not entitled to a defense of usury, and because purchase money mortgages are not considered loans or forbearances of money within the meaning of the New York usury statutes.